## Pensyl's Estate.   Pensyl's Appeal.

*Will—Issue devisavit vel non—Testamentary capacity.*

On an application for an issue devisavit vel non, the contestants, to show lack of testamentary capacity in the testatrix, introduced evidence which tended to show that the testatrix at the time the will was executed was suffering from partial failure of memory, was unable to recognize acquaintances of years before, that she believed her sons were all dead when they were not, that she sat stupid and would not talk unless spoken to, that her eyesight was poor, that she was lame and feeble and had a twitch in one of her hands, that her clothing was bought for her by her daughter-in-law, and that she was not capable of waiting on herself at table. Witnesses for the proponent testified that, at the time of the execution of the will, testatrix was able to talk intelligently, that her understanding was good, and that she was able to recognize her neighbors. The three subscribing witnesses to the will, two of whom were reputable members of the bar, and the third, the family physician, testified that testatrix gave instructions as to how the will was to be drawn, that it was read over to her, and that she understood it. *Held,* that an issue was properly refused.

*Undue influence—Evidence.*

In the above case testatrix excluded two of her sons from any participation in her estate. She stated to the attorney who drew the will that these sons "had not treated her right." It appeared from the evidence in the case that the two sons thus excluded had instituted lunacy proceedings against their mother, and that these proceedings had failed. Testatrix had

two other sons, to one of whom she had intrusted the care of her estate, and with the other she lived until her death.  There was no evidence to show that the two sons benefited by the will were present when the will was executed or had dictated the terms of it to their mother.  *Held*, that the evidence was insufficient to justify the court to award an issue on the question of undue influence.

Argued May 22, 1893.  Appeal, No. 161, Jan. T. 1893, by Samuel Pensyl, from decree of O. C. Northumberland Co., Feb. T., 1891, No. 13, refusing an issue devisavit vel non to try the validity of the will of Mary Pensyl, deceased.  Before STER-RETT, C. J., WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Petition for issue devisavit vel non.

From the record it appeared that Mary Pensyl died on or about Nov. 8, 1890, leaving to survive her, four sons, William Pensyl, Adam Pensyl, Samuel Pensyl and Francis Pensyl.  By a writing purporting to be a will bearing date May 15, 1888, she bequeathed to Adam Pensyl $160 per year from March 12, 1883, until her death, to pay him for her board and maintenance, and in satisfaction of the arrears of the annual interest of $160 charged against his farm in her favor from that date ; and all the residue of her estate, consisting entirely of personalty, she gave to William Pensyl and Adàm Pensyl in equal shares, to the exclusion of her sons Francis and Samuel, and named William Pensyl the executor thereof.  The subscribing witnesses to the will were Dr. S. F. Gilbert, W. H. M. Oram, Esq., and C. R. Savidge, Esq.  The subscribing witnesses testified that testatrix gave instructions as to how the will was to be drawn, that it was read over to her, and that she understood it.  Witnesses for the proponent testified that at the time of the execution of the will, testatrix was able to talk intelligently, that her understanding was good, and that she was able to recognize her neighbors.

Evidence on behalf of the contestants tended to show that in 1886 Mary Pensyl left the house of her son Adam to go to the house of her son Samuel ; that Adam missed her and brought her back home, before she got to Samuel's house, and she wept because she could not go to see her son ; that in 1887, Mary Pensyl was found in the house of Adam Pensyl, in a room with the doors closed, sitting upon a chair with her head bent

down, looking on the floor, waving her hand and moving her lips; that in 1886, she wanted to go with her stepdaughter to see Samuel; Adam made her stay at home. That in June, 1888, she believed that her boys were all dead. She could not be made to understand that they were alive, and when she was asked whether she did not live with her son Adam, and about her other sons, she said they were all dead. That in March, 1888, she was found sitting on a chair in Adam's house working her hands. She did not know her niece, who had lived in the neighborhood for years, or be made to understand that the niece was a daughter of her deceased brother, and did not know that her deceased brother had ever lived, and when his name was mentioned, had no memory of him. She sat stupid and would not talk unless spoken to. That in 1887, and the years following, she would remember for an instant when told the name of a person whom she had known in early years and in the next instant forget it and ask " who are you ? "

It appeared from the evidence that in 1884, Samuel and Francis instituted proceedings de lunatico inquirendo, to have their mother declared a lunatic and incompetent to manage her property. Upon a hearing had before a commissioner and a jury of inquest, it was determined that Mary Pensyl was not a lunatic.

The court, in an opinion by MAYER, P. J., of the 25th judicial district, specially presiding, refused the issue.

*Errors assigned* were refusal of issue.

*W. H. Rhawn* and *J. C. Bucher, S. P. Wolverton* and *W. A. Sober* with them, for appellant, cited: Caldwell v. Anderson, 104 Pa. 199; Foster's Est., 142 Pa. 69; Levis's Est., 140 Pa. 184; Dean v. Negley, 41 Pa. 317; Yardley v. Cuthbertson, 108 Pa. 395; Boyd v. Boyd, 66 Pa. 292; Darlington's Est., 147 Pa. 627; Miskey's Ap., 107 Pa. 629; Murdy's Ap., 123 Pa. 471; Wilson's Ap., 11 W. N. 333; Pierse v. Waring, 1 P. Wms. 121; Hylton v. Hylton, 2 Ves. Sr. 547; Irwin v. West, 31 Leg. Int. 397; Reichenbach v. Ruddach, 127 Pa. 600; Blume v. Hartman, 115 Pa. 32; Gibson's Est., 11 W. N. 355; Wilson v. Mitchell, 101 Pa. 502; Leech v. Leech, 21 Pa. 69; Herster v. Herster, 23 W. N. 124; Napfle's Est., 46 Leg. Int. 57; Mc-

Taggart v. Thompson, 14 Pa. 149; Eddey's Ap., 109 Pa. 406; Combs' Ap., 105 Pa. 155 ; McKim's Est., 27 W. N. 110; Wood's Est., 13 Phila. 236; Newhard v. Yundt, 132 Pa. 324; Sharpless's Est., 134 Pa. 250.

*James Scarlet*, for appellees, cited: Knauss & Seip's Ap., 114 Pa. 10 ; Graham's Ap., 61 Pa. 43; Cozzens' Will, 61 Pa. 196 ; DeHaven's Ap., 75 Pa. 337 ; Harrison's Ap., 100 Pa. 458; Schwilkes' Ap., 100 Pa. 628 ; Wilson v. Mitchell, 101 Pa. 495 ; Jenkintown Bank's Ap., 23 W. N. 362; Schouler on Wills, § 186 ; Grabill v. Barr, 5 Pa. 443 ; Thompson v. Kyner, 65 Pa. 368; Egbert v. Egbert, 78 Pa. 328; Eckert v. Flowry, 43 Pa. 46 ; Herster v. Herster, 116 Pa. 620 ; Stokes v. Miller, 10 W. N. 241; Tawney v. Long, 76 Pa. 115; McMahon v. Ryan, 20 Pa. 329.

PER CURIAM, October 2, 1893:

This application, in the court below, for an issue devisavit vel non, to determine the validity of the will of Mary Pensyl, was based upon the allegations, (*a*) that the testatrix was not of sound mind and memory, and (*b*) that the will in question was procured by the exercise of undue influence on the part of William Pensyl and Adam Pensyl, beneficiaries named therein.

Over four hundred pages of testimony, partly in support of the application and partly against it were taken. As shown by the elaborate opinion returned with the record, the evidence thus produced was carefully and exhaustively considered by the learned judge who specially presided at the hearing. In view of this, as well as the manifestly correct conclusions reached by him, further discussion of the evidence is deemed unnecessary. An examination of the record, with reference to each of the six specifications of error, has satisfied us that the issue was rightly refused. The decided weight of the evidence is in favor of the testamentary capacity of the testatrix, and it also fails to disclose that any undue influence, such as the law condemns, was exerted by either William or Adam Pensyl to induce their mother to bequeath her estate to them. Indeed the will is neither unnatural nor unreasonable, in the circumstances. As correctly stated by the learned judge, in the conclusion of his opinion, William, the eldest son, had taken the

charge and care of his mother's estate, and she had lived and been cared for at the house of Adam.  The two sons, Samuel and Francis, had attempted to have their mother declared a lunatic and her property taken out of her possession.  Under such circumstances, what more natural and reasonable than for the testatrix to regard with favor the two sons who had stood by her in her old days, to the exclusion of the other two sons who had attempted to have her declared insane ?  In fact, the testatrix gave as a reason for excluding Samuel and Francis from any participation of her estate, " that Samuel and Francis had not treated her right."

Viewing the testimony in its most favorable light, there is nothing in it that would warrant any jury in rendering a verdict against the validity of the will.  Neither of the specifications is sustained.

Decree affirmed and appeal dismissed with costs to be paid by appellant.