## Douglass's Estate. Douglass's Appeal.

*Will—Issue devisavit vel non—Undue influence—Confidential relation—Evidence—Burden of proof.*

Where a will is drawn in favor of one occupying a confidential relation who either writes it, or procures it to be written, or whose advice is sought and taken, the burden rests on such beneficiary to disprove undue influence. This is not the case however where there is no evidence that the beneficiary solicited the benefit, or wrote the will, or procured it to be written, or that his advice was sought or taken.

Testatrix, the owner of several farms and other property, made her superintendent the executor of her will, and devised to him one of her most valuable farms. The evidence did not show that the relation between them was any more confidential than that of employer and employee usually and necessarily is. It did not appear that the executor was in any way connected with the making of the will either by agency, procurement, suggestion, persuasion, solicitation, presence at or knowledge of its execution. *Held*, that the burden was not shifted to the proponent to show that the will was not executed under undue influence.

*Will—Testamentary capacity—Evidence.*

An issue devisavit vel non, to determine testamentary capacity of testatrix, will not be granted where the evidence is in effect that testatrix during the last years of her life was in bad health, suffering from dyspepsia, catarrh, headache, slight insomnia and occasional lapses of memory and absent-mindedness, but that she did not suffer from imbecility or delusion, and that she was entirely competent to transact business at the time she made her will, and that she continued to attend to business, make contracts, draw checks, etc., up to near the time of her death.

*Issue devisavit vel non—Evidence of forgery.*

An issue devisavit vel non will not be awarded, to determine validity of signature of testatrix, where the evidence for contestants is that of three witnesses who testified that in their opinion and belief the signature was not genuine, and of two witnesses who testified that testatrix declared at the time of her death that she had no written will; while the subscribing witnesses, two reputable members of the bar, testified that they saw testatrix sign her name to the will and that she requested them to sign as witnesses to her signature.

Argued May 17, 1894. Appeal, No. 432, Jan. T., 1894, by Andrew A. Douglass, from decree of O. C. York Co., refusing issue devisavit vel non in estate of Sarah J. Douglass, deceased. Before Sterrett, C. J., Green, McCollum, Mitchell, and Fell, JJ. Affirmed.

Appeal from register of wills.

The following opinion was filed by LATIMER, P. J.:

" The rules of law governing this case are well settled, simple and easy of application.

" Under the statute, section 41 of the act of March 15, 1832, 2 Purd. Dig. 1476, pl. 145, where there is a substantial dispute upon a material question of fact, an issue devisavit vel non for the trial of the validity of an alleged will is a matter of right and the test of substantiality in the dispute is that a verdict could be supported by the trial judge, upon a review of all the evidence adduced : Sharpless's Estate, 134 Pa. 250.

" If the testimony is such that, after a fair and impartial trial, resulting in a verdict against the proponents of the alleged will, the trial judge, after a careful review of the testimony, would feel constrained to set aside the verdict, as contrary to the manifest weight of the evidence, it cannot be said that a dispute has arisen within the meaning of the act: Knauss's Appeal, 114 Pa. 10 ; Fow's Estate, 147 Pa. 264; Tallman's Estate, 148 Pa. 287; Pensyl's Estate, 157 Pa. 468.

" Testamentary capacity is the normal condition of one of full age, and the burden of proof rests on him who calls it in question ; and he must establish the want of it not in a doubtful but in a positive manner : Grubbs v. McDonald, 91 Pa. 236 ; Landis v. Landis, 1 Gr. 248. When however mental incapacity is once established, the proponents of a subsequently executed will must show capacity.

" A will duly executed by a testator of lawful age is presumed to be the unbiased, as well as the intelligent expression of the will of such testator, and on those who aver undue influence rests the burden of proof : Stokes v. Miller, 10 W. N. 241 ; Linton's Appeal, 104 Pa. 238.

" But where a will is drawn in favor of one occupying a confidential relation, who either writes it, or procures it to be written, or whose advice is sought and taken, the burden rests on such beneficiary to disprove undue influence. Especially is this so, where the testator, though possessing testamentary capacity, is of weak mind : Boyd v. Boyd, 66 Pa. 283 ; Cuthbertson's Ap., 97 Pa. 163 ; Armor's Estate, 154 Pa. 517 ; Wilson v. Mitchell, 101 Pa. 495. This is not so however where there is no evidence that the beneficiary solicited the benefit, or

wrote the will, or procured it to be written, or that his advice was sought and taken ; in such a case intimately friendly relations between testator and beneficiary, such as living with him, nursing him and managing his business, do not import undue influence, or shift the burden of proof from those who allege it upon the beneficiary : Herster v. Herster, 122 Pa. 239, 259 ; Miller v. Oestrich, 157 Pa. 268.

" The undue influence which avoids a will must amount to constraint, which substitutes the will of another for that of the testator and destroys the free agency of the latter at the time when the will is made : Eckert v. Flowry, 43 Pa. 51.

" Undue influence exists when, through weakness, ignorance, dependence, or implicit reliance of one on the good faith of another, the latter obtains an ascendency which prevents the former from exercising an unbiased judgment; and, to affect a will, it must, in a measure at least, destroy free agency, and must operate on the mind of the testator at the time of making the will : Herster v. Herster, 122 Pa. 239. Those of feeble mind being the more easily subjected to improper influence, the condition of the mind of the testator is always a proper subject of inquiry in connection with the allegation of undue influence, and in fact the former is usually involved in the trial of a question of the latter : Wilson's Appeal, 99 Pa. 550. As undue influence may be exercised secretly, so it may be proved, not directly, but circumstantially ; but the evidence of it must be satisfactory, and must show that it operated at the making of the will : Herster v. Herster, 116 Pa. 612.

" A person of sound and disposing mind is one who has a full and intelligent knowledge of the act he is engaged in, a full knowledge of the property he possesses, an intelligent perception and understanding of the disposition he desires to make of it, and of the persons and objects he desires shall be the recipients of his bounty. But it is not necessary that he shall collect all these in one review. It is the want of this degree of intelligence which they must show who contest a will on the ground of want of mental capacity : Miller v. Oestrich, 157 Pa. 264.

" The importance of this case, and the large amount of the pecuniary interests involved, seemed to demand a careful and thorough re-examination of voluminous testimony, as well as

of the minute and exhaustive argument of the counsel for the
appellants, and the briefs filed by the counsel for the pro-
ponents of the will.  All this has served to strengthen and
ripen into conviction the impression received at the argument.

"The averments of fact against the will, to determine which
an issue is asked for, are the following: (1) That the paper
writings purporting to be the last will and testament of Sarah
J. Douglass were not legally proved before being admitted to
probate.  (2) That, at the date of same, the said Sarah J.
Douglass did not possess a sound and disposing mind, mem-
ory and understanding, sufficient to enable her to make a
valid will.  (3) That said will and codicil were made under
undue influence exercised on her by some person undisclosed.
(4) That she did not sign said papers.  (5) That she did not
sign them knowing them to be a will and codicil.

"It is difficult to understand just what is meant by the first
of said averments, and the evidence taken in support of it
does not serve to relieve its obscurity.  The paper writings
admitted to probate as the last will and testament of Sarah J.
Douglass, deceased, by the register of wills, and by him pro-
duced and filed in this court in obedience to a citation issued
therefor, have attached to them the affidavits of the subscribing
witnesses, with the decree of the register admitting the papers
to probate, and the memorandum of the grant of letters testa-
mentary thereon, all bearing date and purporting to have been
done on August 30, 1888.   The proceeding seems to have been
entirely regular in form and substance.  If it was not so, if the
witnesses did not attend, or were not sworn, or were incompe-
tent, or if the register was derelict in the performance of any
official duty, this should have been shown by competent legal
evidence; and for that purpose the register himself or his dep-
uty or the subscribing witnesses might have been called.  But
none of this was done.  Instead of proving, in the manner in-
dicated, what was actually done at and about the probate, the
appellants proved certain unsworn and unofficial declarations
of the register to certain witnesses as to the time when he at-
tached the probate to the will, and then, by the same witnesses,
that, at periods subsequent to the date of the alleged probate,
they saw the will and it had no probate attached to it, and
from this and the fact that the exemplification of the will,

furnished by the register to Andrew A. Douglass, dated August 30, 1888, contains no copy of the probate, they ask the inference to be drawn that the papers were not legally proven. Of course this cannot be done. The unsworn declarations of the register were not evidence for any purpose, and the other testimony does not support the inference sought to be drawn from it. This branch of the case may be dismissed with the remark that there is no legal evidence to support the averment that the will was not legally proven before being admitted to probate, and of course no ground for granting an issue to try that fact.

" Three witnesses testified to their opinion and belief that the signatures to the will and codicil were not the genuine signatures of the testatrix, and this with certain alleged declarations of the testatrix, notably that to McNary about three weeks before her death, and that to Maggie Collins and others on her death bed, when she was in the very article of death, that she had no other written will, constitute the whole unsubstantial fabric of the appellant's case against the genuineness of the signatures to the will and codicil. On the other hand the subscribing witnesses, two of the most capable and reputable members of our bar, men distinguished for probity, and disinterested in this controversy, except as counsel for Samuel M. Fulton who is the executor and proponent of the will and a devisee under it, testify that they were personally present and saw and heard the testatrix sign, seal, publish and declare this will and codicil as and for her last will and testament, and that they, at her request, subscribed their names thereto as witnesses. It is obvious that the overwhelming weight of this testimony is in favor of the genuineness of the signatures, and that a verdict against the will on that ground would be set aside in a moment. It follows that there is no reason for granting an issue to try that fact.

" The testimony is wholly insufficient to sustain the averment of testamentary incapacity. As always in such cases, it consists largely on both sides of facts and circumstances in the life and conduct of this testatrix, testified to by witnesses who had opportunities of intercourse and observation ; and of their opinion based thereon, as to her mental condition and capacity, at, before and about the time the alleged will was made. Such

opinions are always admissible and their weight depends largely on the intelligence of the witness, the opportunities of observation, the extent of the intercourse, and especially the facts and circumstances detailed in the evidence on which the opinion is based.

" In this case the evidence on this subject adduced by appellants shows nothing more in regard to this testatrix, than that during the several last years of her life she was in bad health, suffering from dyspepsia, catarrh, headache, slight insomnia, and occasional lapse of memory and absent-mindedness. There is in it an entire absence of proof of imbecility or delusion, or incapacity to transact business, or of anything from which the existence of brain deterioration, or mental disease, could be fairly inferred; and certainly no proof of want of testamentary capacity. And the medical testimony does not help the appellants' case; for Dr. Meals, the only medical witness on that side who testified from actual personal observation, made in 1885, declined to express the opinion that she then had brain disease or mental infirmity; and, even under the urgency of counsel, would go no further than to say that some of her symptoms were those of paresis; but distinctly refused to say that she was then incompetent to make a will. And it is in evidence that, after that date, she administered upon and settled up two estates, and that she continued to attend to business, make contracts, pay bills, draw checks, etc., up to near the time of her death. The whole of the testimony on this subject adduced by the appellants may be true, and be entirely consistent with the possession of full testamentary capacity by this testatrix; and if any doubt existed, the evidence adduced on the other side would entirely remove it. The subscribing witnesses who were her legal counsel for three years before her death, and had exceptionally good opportunities to observe her business capability, say that she possessed unusual capacity. The testimony of Dr. Curran, the attending physician, taking it for what little it may be worth under the circumstances surrounding the testimony, and in view of the foolish and contradictory talk in which he admitted that he had indulged on this subject, is on the side of testamentary capacity. The other witnesses on the subject, called by proponents, were mainly those who had business dealings with testatrix, and thus had more or less

opportunity to observe her business methods and capacity; and some whose intercourse with her was of a social character. The former class gave her the character of a capable, close, shrewd and careful business woman, while the latter failed to discover any evidence of mental alienation. In the written argument submitted by the learned counsel for appellants, great stress is laid on the alleged fact that appellees did not call in testatrix's friends and neighbors to prove her sane, "fifty of whom," says the learned counsel, "could have proved her sanity if it be a fact." This is in curious forgetfulness of the principle that places the burden of proof on appellants. If there be so great a cloud of witnesses with sufficient knowledge and intercourse with testatrix to qualify them to testify on this subject, their absence is much more conspicuous on appellants' than on appellees' side of the case.

"Having regard to the opportunities of observation of the witnesses respectively, and the nature, character and effect of the facts to which they testified, and on which they based their opinions, and giving due weight to all the evidence on this subject, it is plain that appellants have failed entirely to prove want of testamentary capacity, and that the overwhelming weight of all the testimony is so clearly the other way, that a verdict against the will on that ground would necessarily be set aside. It follows that no issue should be granted to determine that question.

"The evidence entirely fails to show that this will and codicil were brought about by undue influence. The petition does not disclose the names of the person or persons supposed to have exercised the influence complained of, but the evidence shows that Samuel M. Fulton was the person meant. He is the executor of the will, and one of the proponents of it, and a devisee and legatee to the extent of about $10,000. He was a near neighbor of the testatrix, and for some years before her death managed her farms and attended to other business for her, and was so doing at the date of the alleged will and codicil. But the evidence very clearly indicates that a large part of her business was transacted by herself, sometimes with but oftener without his aid. The relation between them is not shown to have been any more confidential than that of employer and employee usually and necessarily is, and the intercourse is

not shown to have been unusually intimate or frequent. That Mr. Fulton enjoyed her confidence is rather inferable from the continuance of the business relation between them than from anything else in the testimony, and he is not shown by anything in the evidence to have exercised any controlling influence over her in anything. But the most remarkable, the controlling and decisive circumstance in the case, is the entire absence of any evidence connecting Samuel M. Fulton in any way with the making of this will, either by agency, procurement, suggestion, persuasion, solicitation, presence at, or knowledge of its execution. While mere solicitation or persuasion, not carried to undue length, are insufficient to avoid a will, still if Fulton had been connected, in the way indicated, with the making of this will or codicil, there might have been some force in the contention that the relation existing between him and Miss Douglass was so far confidential as to shift the burden upon the beneficiary of proving full knowledge and unbiased disposition in the testatrix. But in the absence of such proof connecting the beneficiary with the act of testating, a much more confidential relation than exists in this case has been held insufficient to shift the burden of proof from those who allege undue influence : Miller v. Oestrich, 157 Pa. 265 ; Herster v. Herster, 122 Pa. 259. In the latter case, the person alleged to have exercised the influence which secured the execution of the will, was testator's son, who lived with the testator, was intrusted with all his business, and admittedly occupied a confidential relation to him, and under the will took nearly the whole of a large estate to the exclusion of brothers and sisters. 'It is said,' says Mr. Justice CLARK, delivering the opinion of the Supreme Court, 'that Jackson Herster stood in a confidential relation to testator, that he was his son and to some extent interested in his business, but he was not present at the making of the will, nor does it appear that it was made by counsel at his procurement. There is not the slightest proof that he took any part in the actual preparation of the will or codicils. Under these circumstances the burden of proving undue influence is clearly upon those who allege it.'

"So here, Samuel M. Fulton being entirely unconnected with the making of this will in any way, the burden of proof has not shifted, but rests upon those who aver that its execution was

procured by undue influence, to show that fact. This they have entirely failed to do by any evidence on which a verdict could be supported; and hence there is no ground for granting an issue to try that fact.

" There is no evidence at all in the case to afford any support to the averment that testatrix signed the will and codicil in ignorance. She is presumed to have known their contents and legal effect until the contrary is shown: Linton's Ap., 104 Pa. 238. Permitting or procuring her to sign in ignorance of the true character and effect of the papers would have been a crime which cannot be inferred, but must be proven. The well known integrity of the subscribing witnesses, who were Miss Douglass's counsel, affords the amplest guarantee that nothing of the sort was attempted with their knowledge. And their professional ability afforded her ample protection against any such attempts if made on the part of anybody else; of which, however, there is not the slightest evidence.

"It has not been deemed necessary in deciding this case to go through the entire mass of the evidence, separate the wheat from the chaff, and determine what is and what is not competent. A considerable part of the appellants' evidence was certainly out of time, and much of it probably irrelevant and otherwise incompetent. It seemed best in deciding the case to treat it all as competent, and rule on the effect of it.

" It has not been overlooked, in dealing with the questions of mental capacity, undue influence, and knowledge of the character and effect of the papers, that the subscribing witnesses contented themselves with making formal proof of testatrix's execution of the will and codicil, while in most of the cases in the books, the subscribing witnesses, scrivener, etc., usually testified as to all the facts and circumstances attending the execution, to show full knowledge, capacity and freedom from undue influence. But an examination of the cases will show that in most if not all in which such proof was made, enough had been proven by the contestants of the will to shift the burden onto the proponents. That stage of this case was never reached. The appellants' proof never attained the point at which the burden shifted upon the proponents of making anything more than formal proof of execution.

" The rule to show cause why an issue should not be granted

is discharged and the appeal dismissed at the cost of the appellants."

*Error assigned* was above decree.

*H. H. McClune, J. W. Johnson* with him, for appellant, cited: Schwilke's Ap., 100 Pa. 631; Cuthbertson's Ap., 97 Pa. 163; Armor's Est., 154 Pa. 517; Boyd v. Boyd, 66 Pa. 283; Herster v. Herster, 116 Pa. 612; Reichenbach v. Ruddach, 127 Pa. 564; Wilson's Ap., 99 Pa. 545; Darlington's Est., 147 Pa. 624; Landis v. Landis, 1 Gr. 249; Wilson v. Mitchell, 101 Pa. 495; Yardley v. Cuthbertson, 108 Pa. 395; Pidcock v. Potter, 68 Pa. 342; Redfield on Wills, 529; Sharpless's Est., 134 Pa. 250; Com. v. Bunn, 71 Pa. 405; Pensyl's Est., 157 Pa. 465; Miller v. Oestrich, 157 Pa. 264; Tallman's Est., 148 Pa. 286; Fow's Est., 147 Pa. 264.

*Cochran & Williams, Geo. S. Schmidt, Stewart, Niles & Neff* and *H. L. & G. G. Fisher*, for appellees, not heard, cited: Act of March 15, 1832, P. L. 145; Knauss's Ap., 114 Pa. 20; Sharpless's Est., 134 Pa. 259; Fow's Est., 147 Pa. 264; Tallman's Est., 148 Pa. 287; Pensyl's Est., 157 Pa. 468; Foster's Est., 142 Pa. 62; Herster v. Herster, 116 Pa. 626; De Haven's Ap., 75 Pa. 340; Harrison's Ap., 100 Pa. 458; Schwilke's Ap., 100 Pa. 628; Cozzens' Will, 61 Pa. 196; Stewart's Est., 149 Pa. 114; Grubbs v. McDonald, 91 Pa. 241; Landis v. Landis, 1 Grant, 248; Leech v. Leech, 21 Pa. 69; Stevenson v. Stevenson, 33 Pa. 471; Miller v. Oestrich, 157 Pa. 267; McMaster v. Blair, 29 Pa. 298; Thompson v. Kyner, 65 Pa. 382; Cauffman v. Long, 82 Pa. 77; Stokes v. Miller, 10 W. N. 241; Linton's Ap., 104 Pa. 238; Tawney v. Long, 76 Pa. 115; Eckert v. Flowry, 43 Pa. 46; Hindman v. Van Dyke, 153 Pa. 243; Doran v. McConlogue, 150 Pa. 98; McMahon v. Ryan, 20 Pa. 331; Wainwright's Ap., 89 Pa. 220; Clifton's Est., 21 Atl. R. 333; Simcox's Est., 1 Dist. R. 653.

PER CURIAM, July 11, 1894:

This decree is affirmed on the clear and satisfactory opinion of the learned president of the orphans' court. The questions presented by the record have been so fully considered by him that further comment is unnecessary.

Decree affirmed and appeal dismissed at appellant's costs.