## Seiler's Estate.

*Will—Rule governing award of issue d. v. n.*

It has been held repeatedly, that in determining whether or not there is such a dispute as should be submitted to and passed upon by a jury, it is the duty of the court to consider all the pertinent evidence. If the testimony is such that after a fair and impartial trial, resulting in a verdict against the proponents of the alleged will, the trial judge, after a careful review of all the testimony, would feel constrained to set aside the verdict as contrary to the manifest weight of the evidence, it cannot be said that a dispute, within the meaning of the act, has arisen. On the other hand, if the state of the evidence is such that the judge would not feel constrained to set aside the verdict, the dispute should be considered substantial, and an issue should be directed. This simple and only safe test is supported alike by reason and authority.

Argued Feb. 16, 1900. Appeal, No. 24, Feb. T., 1900, by Joel Seiler, in the matter of the estate of Hannah Seiler, deceased, from decree of O. C. Union Co., dismissing appeal from the register. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by RICE, P. J.

Appeal from the decree of the register of wills admitting to probate a paper purporting to be the last will and testament of Hannah Seiler, deceased. Before McCLURE, P. J.

The facts sufficiently appear in the opinion of the court.

The court below dismissed the appeal from the decree of the register and refused an issue. The petition for citation d. v. n. prayed for the determination of the following questions:

1. Whether the said Hannah Seiler was at the time of the alleged execution of said instrument of sound, disposing mind, memory and understanding and of sufficient legal capacity to make a valid will and testament.

2. Whether the said Hannah Seiler was induced to make said paperwriting by undue influence of the said Pascito Seiler, William Morningstar and others.

3. Whether the said alleged will ever was in the custody and control of the said Hannah Seiler.

The court dismissed the petition and Joel Seiler appealed.

504, (1900).]       Assignment of Errors—Arguments.

*Errors assigned* were (1) in deciding that there was no evidence to support the allegation of undue influence. (2) In deciding that there was not sufficient evidence of want of mental capacity in Hannah Seiler to make the will in question, notwithstanding the evidence of her imbecility, and the conduct of her sister Pascito at the time the alleged will was executed, and the unnatural character of the will. (3) In separating the question of " mental incapacity " from the cognate question of "undue influence," and passing upon each without regard to the other. (4) In holding that by reason of his illegitimate birth and his want of inheritable blood the property would not descend to his mother's brother and sisters but would escheat to the state. (5) The commonwealth of Pennsylvania or her representative, the escheator, has no status in law, or under any will Hannah Seiler might have made, to escheat the estate devised to Pascito Seiler's illegitimate son. The decree of the orphans' court is coram non judice. (6) In making the following order or decree:    " We are accordingly of the opinion that the issue should be refused, and the appeal from the register dismissed, at the appellant's cost, and it is so ordered."

*Samuel H. Orwig*, for appellant.—The issue devisavit vel non involves the execution and not the contents, yet the contents so far as they have a bearing on the question are pertinent: Patterson v. Patterson, 6 S. & R. 55.

That a legatee was present when the will was written and interfered, and the scrivener was told to draw the will as the legatee dictated, is some evidence of undue influence which must be submitted to the jury: Krepps v. Krepps, 4 Brewst. 38.

William Morningstar, the legatee, may not have been present when the will was written, but his mother, his sole heir by statute, was present and dictated the will.

Undue influence is some physical or moral coercion, which destroys the free agency of the testator at the time when the will was made; some constraint which substitutes the will of another for that of the testator; a personal constraint which operates on the mind of the testator in the very act of making the testament: Thompson v. Kyner, 65 Pa. 368, 375. Less influence will be required to control a weak will than the will of one whose mind is in full vigor.

It is quite probable that the mind of John Bowman was so unsound as to be incapable of perfectly disposing of his estate by will. At all events there was evidence thereof sufficient to submit to a jury: Tawney v. Long, 76 Pa. 106.

*J. Thompson Baker*, with him *John A. Beard*, for appellee.

OPINION BY RICE, P. J., July 26, 1900:

These proceedings began with an appeal from the decree of the register of wills admitting to probate a paper purporting to be the last will and testament of Hannah Seiler, followed by a petition setting forth that William Morningstar, the sole beneficiary under the will and administrator cum testamento annexo, died intestate, unmarried and without issue, and praying that a citation issue to the respondent, escheator representing the commonwealth and administrator of the estate of William Morningstar, commanding him to answer the petition and to show cause why an issue devisavit vel non should not be awarded to determine certain material questions, specifying them, alleged to be in controversy between the petitioner and the respondent. Notwithstanding the fact that the respondent was thus brought into court, the petitioner contends on this appeal from the decree refusing an issue, that the respondent "has no status in law to represent this will." If this position of the appellant be correct, we do not see how there can be any escape from the conclusion that the proceedings instituted by him should have been dismissed for want of proper parties: Miller's Estate, 159 Pa. 562, 575. It seems a novel proposition, that, after a party has been cited to show cause why an issue should not be framed between him and the petitioner, the petitioner may impeach his standing to oppose the decree prayed for. We do not deem it necessary to dwell further upon the fifth assignment of error. It is dismissed.

In support of his contention that the testatrix had not sufficient mental capacity to make a will, the appellant called three witnesses besides himself. They testified that from her childhood she was simple-minded—slow to comprehend—a simpleton. They also testified to certain silly conduct in her youth tending to show that she was weak-minded; and expressed the opinion, that her mental condition improved very little if any up to the

time of her death, and generally, that she had not sufficient mental capacity to manage her own affairs or to make a will. The appellant, the testatrix's brother, testified to the same effect. Opposed to this are the legal presumption in favor of testamentary capacity, the sworn opinion to the same effect of one of the subscribing witnesses, he being the scrivener, and the testimony of eight witnesses who were equal in point of intelligence, disinterestedness and veracity with the witnesses called by the contestant, and who had equal, if not greater, opportunities for observing her actions and forming an opinion as to her mental capacity. They express the opinion that she had sufficient capacity to manage her own affairs and to make a will. Some of these witnesses had dealt with her, and refute by their testimony the inference drawn by the contestant's witnesses that she did not know the value of common things, or of the different denominations of coins and bills, and that she could not make change. The facts that she made contracts and kept them, that in buying goods or selling produce she dealt as ordinary persons do, that she made change correctly, in short, that she managed her own affairs and did business correctly, are of greater weight than the mere opinions of lay witnesses that she was a simpleton and had not sufficient mind to do these very things. There are other facts and circumstances tending to support the respondent's contention. Amongst these is the significant fact that not one of the family of the testatrix, except the appellant, was called to testify to her lack of mental capacity. If she was an "imbecile, a nativitate," as broadly asserted in the appellants history of the case, who would know it better than they? The nonproduction by the party having the burden of proof of witnesses, who, presumably, are best informed on the subject of investigation, especially if their relations with such party are not hostile but friendly, and their bias, if any, would be in his favor, is itself a fact proper to be considered. See Ginder v. Bachman, 8 Pa. Superior Ct. 405, and cases cited. The appellant's own testimony is very much weakened by the admitted fact, that, as administrator of his father's estate, he settled with the testatrix for her share and took from her a written release. He said upon cross-examination: "I regarded her as able to give me a good solid release. How else could I have done it?" It

is not pretended that this estopped him from denying her capacity to manage her affairs, but it is inconsistent with his present contention, and his testimony given in support of it, that she was an imbecile from birth. Further, although he knew before her death what will she had made, he made no attempt to contest it until nearly five years after it was probated. Another consideration to be noticed is, that the disposition she made of her property was not such as a reasonable person would not have been expected to make under all the circumstances.

But it is argued, that, even if the evidence, taken as a whole, would not have warranted the court in sustaining a finding that she had not testamentary capacity, yet, taken in connection with what occurred at the execution of the will, it is sufficient to sustain a verdict that it was obtained by undue influence. There might be some force in this contention. if Pascito Seiler was the beneficiary in the will, or if any possible inference that might be drawn from the evidence as to the active part she took was not successfully rebutted. But it is to be observed that the scrivener saw and heard nothing to induce belief in him that the testatrix was not of sound and disposing mind, memory and understanding ; also that there was nothing extraordinary in Pascito being present at the execution of the will or even in her being spokesman, when it is remembered that the two sisters had always lived together, and that Pascito was the older. It was shown, in addition, that in the absence of her sister and when she could have been under no constraint, Hannah declared to others, before the execution of the will what disposition she intended to make of her property and her reasons for it, and afterwards declared that she had made her will in accordance with her previously expressed intentions. As to the competency and value of this testimony in rebuttal of an allegation of undue influence we refer to Neel v. Potter, 40 Pa. 483 and Titlow v. Titlow, 54 Pa. 216.

It has been held repeatedly, that in determining whether or not there is such a dispute as should be submitted to and passed upon by a jury, it is the duty of the court to consider all the pertinent evidence. "If the testimony is such that after a fair and impartial trial, resulting in a verdict against the proponents of the alleged will, the trial judge, after a careful review

of all the testimony, would feel constrained to set aside the verdict as contrary to the manifest weight of the evidence, it cannot be said that a dispute, within the meaning of the act, has arisen. On the other hand, if the state of the evidence is such that the judge would not feel constrained to set aside the verdict, the dispute should be considered substantial, and an issue should be directed. This simple and only safe test is supported alike by reason and authority:" Knauss's Appeal, 114 Pa. 10; Herster v. Herster, 116 Pa. 612; Miller's Estate, 179 Pa. 645; Pensyl's Estate, 157 Pa. 465; Douglass's Estate, 162 Pa. 567. Applying this rule the learned judge of the court below has held in a carefully considered opinion that a verdict against the will ought not to be sustained because it would be against the manifest weight of the evidence. He has touched upon many pertinent matters which we have not mentioned but which should not be overlooked. After a careful examination on our part as if it were to be considered by us de novo we have reached the same conclusion.

The decree is affirmed and the appeal dismissed at the appellant's costs.