# De Haven's Appeal.

1. An issue is of right, under Act of March 15th 1832, sect. 41, whenever a dispute arises before the Register's Court, about a fact which is material to the subject in controversy.

2. The Supreme Court will not reverse the decision of the Register's Court in refusing an issue after hearing the testimony, if the lower court would have been bound to set aside a verdict as contrary to the manifest weight of evidence.

3. Cozzen's Appeal, 11 P. F. Smith 196.; Graham's Appeal, 11 P. F. Smith 43, followed.

February 20th 1874. Before AGNEW, C. J., WILLIAMS, MERCUR and GORDON, JJ. SHARSWOOD, J., at Nisi Prius.

Appeal from the Register's Court of *Philadelphia*: No. 84, to July Term 1872.

The proceedings in this case were upon admitting to probate a

paper writing, dated September 2d, 1859, purporting to be the will of Sophia De Haven, deceased, and also another dated April 2d 1861, a codicil to the will.

On the 31st of May 1869, the register admitted these papers to be proved, and issued letters testamentary to Emma D. Hampton and Hugh De Haven, Jr., the executors named in the will.

On the 2d of June 1869, Hugh De Haven and Charles E. De Haven, sons of the decedent, appealed from the decree of the register.

The appellants, after their appeal, presented a petition to the Register's Court, representing that they had appealed and " that in said appeal and the proceedings thereon a ·dispute upon a matter · of fact has arisen, viz. : whether the said paper writings were the last will and testament of said Sophia De Haven ; and your petitioners allege that said paper writings are not her last will and testament, for two reasons, viz. :—

"1. That she was not of sufficient legal capacity at the time of the execution of said paper writings, or either of ·them, to make a valid will and testament.

"2. Because she was induced to make said paper writings by the undue influence of her daughter, Mrs. Emma D. Hampton, to whom, in and by said paper writing, property was devised and bequeathed largely in excess of what was devised and bequeathed to her brothers, the appellants.   Your petitioners therefore pray the court to direct a precept for an issue to the Court of Common Pleas for the city and county of Philadelphia, for the trial of said disputed matter of fact."

The Register's Court appointed an examiner, who took a large amount of testimony on the questions of fact raised by the petition for the issue.

After the coming in of the examiner's report, the Register's Court, May 11th 1872, refused the issue and dismissed the appeal.

Hugh De Haven and Charles E. De Haven appealed to the Supreme Court, and assigned for error :—

1. The court erred in refusing the issue prayed for.

2. The court erred in deciding, in effect, that there was no sufficient evidence to be left to the jury on the questions of testamentary capacity and undue influence.

3. The court erred in deciding, in effect, that there was no evidence on which the jury could decide against the validity of the paper writings alleged to be· the last will and testament of said Sophia De Haven on the issue *devisavit vel non.*

4. The court erred in dismissing the appeal.

*J. H. Gendell* and *E. S. Miller,* for appellants.—If the facts in dispute are material the Register's Court is bound to award an issue if requested : Cozzen's Will, 11 P. F. Smith 196 ; Baxter's Appeal, 1 Brewster's R. 459 ; Bradford's Will, 1 Parsons 157.

[De Haven's Appeal.]

*S. Dickson* and *J. C. Bullitt,* for appellees.—Unless the evidence would sustain a verdict an issue is not of right: Wikoff's Appeal, 3 Harris 281; Graham's Appeal, 11 P. F. Smith 43.

The opinion of the court was delivered, March 9th 1874, by

AGNEW, C. J.—This case is an unsuccessful attempt to convert physical weakness and mental distress into imbecility of mind, and to extract undue influence over the judgment and will of a parent, from filial affection and devotion to the parent's welfare and happiness.   Mrs. Sophia De Haven's husband was an invalid for years, and for months before his death a bedridden sufferer.   Some of her sons were irregular in life, and disposed to draw heavily upon her purse.   She, the wife and mother, whose will is in controversy, was a woman of great sensibility, quick in feelings, and ardent in affection.   In prosperity she was lively and pleasant, and happy while the current of life ran smoothly; but in affliction she became nervous, excitable, despondent, and full of tears.   Owing to the long-continued sickness, suffering, and death of her husband, the misery arising from her sons, and the death of John, she frequently gave way to grief, and became unable to control her feelings; and was seized with hysteria of the most marked and distressing character.   During this gloomy period of her life, it caused her to cry and laugh in the same instant, and to the unthinking to appear to be beside herself.   Under such circumstances it was not difficult to find persons ready to believe Mrs. De Haven's mind had become unsettled, and to form opinions of her unsoundness founded on these exhibitions of distress and hysteria.   These opinions form the principal staple of the case of the appellants; while facts of a distinct and convincing kind are entirely wanting.   On the other hand, the proof of Mrs. De Haven's competency, not only to make a proper distribution of her property by will, but to direct, and conduct her affairs, so far as not prevented by bodily infirmity, is overwhelming.   Not only was she able to furnish instructions for her will, but she actually visited the office of her adviser and scrivener alone, and executed the codicil there under circumstances to evince both ability and purpose of mind.   Her testamentary acts were not done upon a sick or dying bed, were not the products of a wandering and sinking intellect, but were executed with full purpose and resolution in 1859 and 1861, years before her death, and before that paralysis, in 1865, which finally broke down her intellect and in two years brought her to the grave.   From 1859 until 1865, facts of the strongest character evince her knowledge of business, and disposing power—acts of deliberation and thoughtfulness in contracting liabilities, conveying property and receiving and paying out money, calculated to arrest attention and demand the scrutiny of those with whom she dealt, had there been anything of the disability imputed to her by those who now contest her will.

[De Haven's Appeal.]

The contestants themselves were parties to some of these transactions, joining in and receiving deeds, making notes, paying money, and acting as men having not the slightest doubt of her capacity. In one transaction for the accommodation of Kay & De Haven, she gave more than eighty notes, until in 1865, her decaying powers made it necessary to desist calling upon her. So she received the rents from her tenants monthly, and gave receipts without number. Altogether, the facts proving her soundness of mind are so overwhelming, and the opinions to the contrary so unfounded, no court would suffer a verdict against the will to stand for a moment.

The evidence of undue influence by Mrs. Hampton over Mrs. De Haven's mind, is equally weak. There is not a fact in evidence having any weight. The evidence is conclusive that the provision she made for her daughter, Mrs. Hampton, was long contemplated and believed to be due to her, because of the inequality between the provision for her and that for the sons, in the will of her husband. When, added to this, Mrs. Hampton took upon herself the management of her household affairs and attention to her business, while in her season of distress and suffering; and by her love and regard, and those attentions which a daughter devoted to her mother only can render, brought back to her comparative happiness and comfort, we cannot wonder that Mrs. De Haven felt it a duty to provide liberally for such a daughter. Yet in doing this, she did not forget her sons. Though grieved by what she deemed their errors, she remembered them in her will in a manner to indicate it was not a nominal recollection, that thinks to deprive, but a thoughtful remembrance, which gives liberally according to desert. Upon the whole, we find no ground upon which a verdict against the will, had an issue been granted, would be permitted to stand.

This brings us to consider the question upon refusing the issue by the Register's Court. Under the 41st section of the Act of 15th March 1832, an issue is of right whenever a dispute upon a matter of fact arises before the Register's Court. But the fact must be material to the subject of controversy, a substantial matter of dispute necessary to be determined before a decision can be reached. It cannot be denied that the petition for an issue, in this case, set forth material facts to be decided, before Mrs. De Haven's will could be admitted to probate, to wit: want of legal capacity to make a will, and undue influence on part of Mrs. Hampton, and an issue was demandable of right to try these facts. But after the refusal of the issue, the parties having gone into the entire evidence, and each having been fully heard, the case being before us on appeal, we must look at it as we always do, to see whether any substantial injustice has been done before we send it back for a rehearing. Certainly we ought not to reverse if the court below would have been bound to set aside the verdict as con-

[De Haven's Appeal.]

trary to the manifest weight of the evidence. Of what use would it be if the case can be decided in but one way? As remarked by Chief Justice Black in Knight's Appeal, 7 Harris 493, a mere naked allegation without evidence or against the evidence cannot create a dispute within the meaning of the law. This was said in a distribution case under a sheriff's sale, where the issue is of right. More to the point is Dean *v.* Fuller, 4 Wright 474, where an attempt was made to set aside a deed on the ground that the grantee had procured it when the grantor was weighed down by grief at the loss of his wife, and, by reason of weakness of mind and body, caused by constant watching and anxiety during her sickness as well as by his advanced age (over eighty years), the grantee was enabled to overreach him. There Justice Thompson said, that after carefully considering the evidence, we think it is entirely insufficient on any ground claimed for it, and asks the pertinent question, why refer insufficient evidence to the jury? It is now especially true, since we hold that a mere spark of evidence is not sufficient to carry a case to the jury. The doctrine as to issues from the Register's Court, is well settled in Graham's Appeal, 11 P. F. Smith 43, to which may be added Cozzens's Will, Id. 196.

Upon the whole case, we find nothing to contest, and the decree of the Register's Court is affirmed with costs, and the appeal dismissed and the record ordered to be remitted to the Register's Court, for further proceedings, if any be necessary.