# Roup's Estate.

*Wills—Probate—Refusal of issue devisavit vel non—Testamentary capacity—Undue influence—Evidence.*

1. An issue devisavit vel non should not be granted when, on a review of all the testimony a judge will feel constrained by the manifest weight of the evidence to set aside a .verdict against the will.

2. On an appeal from an order refusing an issue devisavit vel non, it appeared that the proponents were the widow of the testator, who had been his second wife, and her daughters by a former marriage. .The contestant was a son of the testator by a former marriage. Testator died at eighty-two years of age leaving an estate of $8,000 half of which was represented by a farm and half by personal property. Thirty-one years before testator's death, contestant left his father's house, to live in the west, became prosperous and re-visited his parents' home only three times thereafter. On the third visit east he merely called on his father, and neither showed any interest in the other. The step-daughters of testator made their home with him, assisted in the household work and helped the testator in barn and field work usually done by men. The will was written by a justice of the peace six years before testator's death. It was read to him, and executed by him not in the presence of his wife, and there was no evidence whatever that she or any other person made any suggestion to him as to the disposition of his property. A number of witnesses, including his physician and neighbors testified as to his business capacity showing that he managed his farm, bought the supplies for it and his family, and attended to the investment of his money.

On two occasions, the first nine years before the will was executed, and the second, six years after it was executed, the testator was in a moody condition, and his mind somewhat impaired, but there was nothing to show that he was not in the full possession of his faculties at the time the will was made. *Held,* that an issue devisavit vel non was properly refused.

Argued Feb. 26, 1912. Appeal, No. 291, Jan. T., 1911, by defendant from decree of O. C. Montour Co., Oct. T., 1910, No. 6, refusing an issue devisavit vel non In re Estate of Lafayette F. Roup, deceased. Before Fell, C. J., Brown, Mestrezat, Elkin and Stewart, JJ. Affirmed.

Appeal from Register of Wills. Before Evans, P. J. The opinion of the Supreme Court states the case.

*Error assigned* was decree refusing an issue devisavit vel non.

*H. M. Hinckley,* with him *Wm. Kase West,* for appellant.—An issue should have been allowed: De Haven's App., 75 Pa. 337; Harrison's App., 100 Pa. 458; Knauss' App., 114 Pa. 10; Herster v. Herster, 116 Pa. 612; Miller's Estate, 179 Pa. 645; McGovran's Estate, 185 Pa. 203; Taylor v. Trich, 165 Pa. 586; Hemingway's Estate, 195 Pa. 291; Bennett's Est., 201 Pa. 485; Safe Dep. & Trust Co. v. Lange, 207 Pa. 527; Thomas v. Carter, 170 Pa. 272.

*George B. Reimensnyder,* with him *Grant Herring,* for appellee, cited: Vowinckel v. Patterson, 114 Pa. 21; Graham's Estate, 225 Pa. 314; McNitt's Estate, 229 Pa. 71.

Opinion by Mr. Chief Justice Fell, April 8, 1912:
This appeal is from an order refusing an issue devisavit vel non asked for on the grounds of undue influence and of the want of testamentary capacity. The

contestant of the will was the son of the testator by his
first marriage and his only child. The proponents were
the widow of the testator, who had been his second wife
and her daughters by a former marriage. An issue
devisavit vel non should not be granted when, on a re-
view of all the testimony, a judge would feel con-
strained by the manifest weight of the evidence to set
aside a verdict against the will. Knauss' Appeal, 114
Pa. 10; Graham's Estate, 225 Pa. 314. This test was
applied by the learned judge of the Orphans' Court and
his conclusion should not be set aside unless clearly
shown to be erroneous. This has not been done.

No useful purpose would be served by a general re-
view of the voluminous testimony. The main facts de-
veloped may be briefly stated. The testator died in
1909, at eighty-two years of age, possessed of an estate
of about $8,000, the accumulation of a life of industry
and thrift. Half of the estate was represented by the
farm on which he had lived nearly fifty years and the
balance was in personal property. In 1878, his son, the
contestant, who was then twenty-three years old, left
his father's home in Pennsylvania, and went to Missouri
where he has since lived and prospered in business.
During the thirty-one years following they saw each
other but on three occasions, the first was in 1883, when
the contestant visited his parents' home, the second in
1893, when his parents visited him in Missouri and the
third in 1903, when the contestant called at his father's
house, while on a visit to friends in the locality. This
call appears to have been a mere incident of his visit
and neither father nor son manifested any affection or
regard for or interest in the other. They were kinsmen
in blood only. The testator's first wife died in 1893 and
five years later, in 1898, he married a widow, two of
whose daughters at times made their home with him
and assisted their mother in household work and as-
sisted the testator in barn and field work usually done

by men.   The beneficiaries under the will are the testator's widow and these daughters.

The will was executed six years before the death of the testator.   He went with his wife to the home of a justice of the peace, to whom he made known the disposition he desired to make of his property.   The will was then written, read to the testator, who expressed his satisfaction with it, and signed by him.   His wife was not in the room when he gave directions for the writing of his will, nor while it was being written and there was not the slightest evidence that she or any other person, at this or at any time, made any suggestion to the testator as to the disposition of his property or that he was under any constraint in relation thereto. The charge of undue influence rests on the bare suspicion that influence was exercised because there was opportunity for its exercise.   His testamentary capacity was established by the testimony of his physician, his neighbors and by business men with whom he dealt. He managed his farm, sold his farm products, bought his clothing, furniture, machinery and supplies needed for the family and farm, and attended to the investment of his money.   In these matters he usually consulted his wife who accompanied him when he went from home on business of any kind.

There was testimony as to the want of testamentary capacity which received the careful consideration of the judge who heard and saw the witnesses and was in the best position to judge of their means of knowledge and their bias and it has received ours.   The testator's mind was to some extent impaired for a short time following the death of his wife, when he lived alone on his farm and brooded over his sorrows, and again for a few months immediately preceding his death when he was suffering from physical ailments.   The first occasion was nine years before the will was executed and the second, six years after it was made.   We find no testimony to indicate that at or near the time of the

execution of his will, he was not in the full possession of his faculties. As stated by the learned judge of the Orphans' Court, "In brief, he was what might be termed a hard-working, close-fisted farmer, who could neither read nor write and usually had but little to say and knew what he wanted and needed." Taking into view all the testimony, we find nothing that would sustain a verdict against the proponents of the will.

The order of the court is affirmed at the cost of the appellant.