George A. Burlingame et al.
        vs.     No. 139.
Robert E. Quinn, Executor

### July 26, 1933.

FROST, J. Heard on appellee's motion for new trial after verdict for appellants.

This is an appeal from a decree of the Probate Court of West Warwick whereby said Court admitted to probate an instrument in writing dated the 6th day of February, 1932, purporting to be the last will and testament

of Harriet C. Colvin, who deceased on February 9, 1932.

The testatrix, after bequeathing legacies to various of her relatives, left the remainder of her estate to Isabella McNab, who had been her nurse and housekeeper for approximately four years before she died.

The appellants urge that the will, as so found by the Probate Court, is not the will of Mrs. Colvin because at the time the instrument in question was executed she lacked testamentary capacity and was also unduly influenced in favor of her nurse by Mrs. McNab herself.

At the time of her death, Mrs. Colvin was in the neighborhood of 84 years of age. At the age of 80 years she had suffered a shock which had left her practically paralyzed. During most of her lifetime, according to all the testimony, she was a woman of much intelligence and of marked strength of mind and character. There is some testimony that after the shock in 1928 she showed less strength of purpose but there is even more evidence that she remained to the time of her death a woman of unusual will power.

Mrs. Colvin had made at least two wills prior to the one which was probated. This last was executed on February 6, 1932. The testimony is that she sent for Mr. Quinn some time in January in reference to a will. She had known him for a long time and he had previously done work for her. A draft was prepared and left with her. On February 6 it was signed. On the 8th, two days later, Dr. Mack was called about five o'clock in the afternoon. Mrs. Colvin was in intense pain. She died the next morning about eleven o'clock, from the effects of a rectal hemorrhage. The doctor testified that on February 8th she had testamentary capacity.

Little emphasis was placed on the lack of testamentary capacity during the trial and upon all the testimony the Court thinks there can be no reasonable question that Mrs. Colvin possessed testamentary capacity upon the occasion of the execution of the instrument in question.

The real contest at the trial was around the question of undue influence. Mrs. Colvin had numerous relatives, with all of whom she was apparently on good terms. By the provisions of the instrument in question, she left a substantial portion of her estate to a person who was not a relative. The latter had, however, ministered to her needs for something like four years and during that time apparently did her work acceptably. It is significant, perhaps, that there is no testimony that Mrs. McNab failed to do her work properly. Fred B. Burlingame, in the course of his testimony, said that Mrs. Colvin spoke well of Mrs. McNab as a nurse. In a letter written by Mrs. Colvin to a cousin on January 29, 1932, she spoke in a most friendly way of "Belle" (Mrs. McNab) throughout her letter.

During the trial there was testimony that Mrs. McNab had frequently said that she (meaning herself) was the boss and there was also evidence that she always remained in the room when Mrs. Colvin's relatives called. On the other hand, it was testified that Mrs. McNab took a vacation each summer of several weeks. At such times there was certainly opportunity for Mrs. Colvin's own folks to see her undisturbed by the former's nurse.

It was testified to by several of the appellants or their witnesses that Mrs. Colvin after the shock was easily influenced but there is much testimony from apparently disinterested witnesses that she retained her mental powers to a high degree up to her death. James H. Richardson, a neighbor, said: "I saw no deterioration in her mental capacity." Mrs. Eva M. Green testified that she knew Mrs.

Colvin for 40 years; that during the last year of her life her mental condition was perfect. William Greene asserted that she was the brightest woman he knew of; that she had a mind of her own.

The Court finds little in the testimony on which the jury could base a charge of undue influence either on the part of Mrs. McNab or anyone else. It is true that there was the opportunity. Mrs. McNab through the years must have spent many hours alone with Mrs. Colvin, but opportunity of itself is not sufficient upon which to base a charge of undue influence, as our Court has said in *Calderone* vs. *Calderone*, 48 R. I. 163 at 165. There is no testimony that Mrs. Colvin complained of Mrs. McNab, while there is specific evidence that Mrs. Colvin did not always yield to her nurse, as when the latter wanted her to go south and she would not go. (Appellee's Ex. C.)

After careful consideration of the testimony, both at the trial and thereafterwards, the Court is of the opinion that there was no sufficient evidence upon which the jury could fairly find that the various bequests made in the instrument signed on February 6, 1932, did not represent the desires of Mrs. Colvin uninfluenced by Mrs. McNab, except as she may have been unconsciously influenced by the consistently careful service rendered her through an appreciable period of time.

In the case of wills many people experience a feeling of resentment when a testator leaves his property to persons outside the family. But in the present case the appellants are not needy persons so far as appearances indicate. They are not elderly people. They were given remembrances. Mrs. McNab is a woman of mature years who had served satisfactorily for a considerable time. It can hardly be said to be an unnatural or strange act if the testatrix desired to make easy the life of one who had served to make her comfortable, and this notwithstanding the fact that Mrs. McNab had been fairly paid for her service.

But whether the will be deemed fair or otherwise, it is only for the Court and jury to determine whether it was Mrs. Colvin's will and not somebody's else superimposed upon her. As the Court said, In re Phillips' Estate (1914) 244 Pa. 35, at 47, quoting an earlier case: " 'If she( the testatrix) was of sound and disposing mind and memory when she made her will, and was not acting under an illegal restraint, then her will, in law, must stand, although it may offend the sense of propriety and justice of every man in the land; her prejudices, her likes and dislikes, acquired by her associations in life, were her own as much as the property of which she made distribution.' "

Our own Court said in *Di Benedetto* vs. *Capone et al.* (1929) 148 Atl. 184 at 186: "The testator had a right to dispose of the estate as he chose."

In reaching the conclusion which it has, the Court is not unmindful of the fact that the testimony in this case has been passed upon by a markedly intelligent and painstaking jury. The trial court, however, has a clear duty which the law places upon it to grant a new trial in the event that the testimony fails to furnish a sufficient basis for the finding of the jury.

> *McMahon, Adm'x.* vs. *The Rhode Island Company*, (1911) 32 R. I. 237.

The Court has considered grounds 6 and 7 in appellee's motion for a new trial but it does not consider that they are sufficient to entitle appellee to a new trial.

Appellee's motion is, therefore, hereby granted on the ground that the verdict is against the weight of the evidence.

For appellants: Messrs. Grimm and Littlefield.

For appellee: Messrs. Quinn, Kernan & Quinn.