## Egbert *versus* Egbert.

1. The signature of a subscribing witness to an ordinary instrument implies only that it was *signed* by the party purporting to have signed it; but subscribing as a witness to a will is an assertion that the testator was of sound mind when he executed it.

2. The condition of the testator's mind at the time of executing the will is part of the *res gestæ.*

3. On the trial of an issue *devisavit vel non,* it is competent for the defendant to cross-examine a subscribing witness as to the condition of the testator's mind at the time the paper was executed.

4. All occurring at the execution of a will, including the testator's mental and physical condition, is proper for cross-examination.

5. The presumption is in favor of sanity, and the burden of proving unsoundness in a testator is upon the party impeaching the will.

January — 1875. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Montgomery county:* No. 28, to July Term 1874.

This was a feigned issue, made up August 23d 1873, to try the validity of a paper writing purporting to be the last will of David N. Egbert. George T. Egbert and Horace P. Egbert were plaintiffs, and Hamilton Egbert and William Davis were defendants.

The case was tried March 2d 1874, before Ross, P. J.

For the plaintiffs John Baltz, one of the subscribing witnesses, testified: that he saw the testator "put his name to it as his will." Witness further testified, on cross-examination, as to the circumstances, &c., under which the will was executed.

The defendants then proposed to ask witness, on cross-examination, a number of questions, for the purpose of showing testator's condition of mind; these were objected to by the plaintiffs, rejected by the court and several bills of exceptions sealed. The questions appear in the specifications of error given hereafter.

The other subscribing witness testified that the testator signed the will; the will was read in evidence.

The court charged:—

" This case, in consequence of the action of the defendants, has resolved itself into very narrow limits. Under the testimony the only question which is open for your consideration is, whether the alleged testator executed the paper writing, as to which this issue was framed, as and for his last will and testament. If you believe the testimony, he was a man of full age, and when one of full age executes a testamentary paper, in accordance with the statutory requisites, he is presumed to have been, at the time of its execution, of sound mind and memory, and uncontrolled by undue influence. [It rests upon those who dispute an alleged will upon these grounds, to establish their existence either by direct proof or by facts which tend to prove unsoundness of mind, or a mind unduly influenced, in the act of testation. I charge you, therefore, that

[Egbert *v.* Egbert.]

if you believe, from the evidence, that this alleged testator was of full age and that he executed this paper writing as and for his last will and testament, in the manner described by the witnesses, the law, in the absence of proof to the contrary, presumes he was of sound, disposing mind and memory, and not controlled by undue influence.]"

The verdict was for the plaintiffs. The defendants took a writ of error, and assigned for error that the court rejected the following questions:—

1. Have not some of the legatees under this will said to you that if the will is set aside you will lose your property, or words to that effect?

2. Was David N. Egbert of unsound mind at any time before this will was executed?

3. What was the condition of the mind of David N. Egbert, the alleged testator, as to soundness or unsoundness, at the time he signed this paper?

4. Did you not know at the time David N. Egbert signed this paper, and you witnessed it, that he was not of sound mind?

5. Did you not say more than once before Mr. Egbert signed this paper that he was crazy?

6. Before you signed this paper as a witness did not Mr. Egbert ask you to bring your scythe and mow in his yard, saying that his knee caps had dropped off, and he wanted to look for them, or words to that effect?

7. Before you signed this will as a witness did you not several times say in the presence of Samuel Metzter, that David N. Egbert was crazy and out of his head?

8. Did you not say to Samuel Metzter or in his presence, before this will was signed, that David N. Egbert was crazy, that he had had eight poles cut to throw the church over, and had appointed eight men to do it, and that you were one of those eight men?

They assigned for error also the part of the charge in brackets.

*C. Hunsicker* (with whom was *G. R. Fox*), for plaintiffs in error.—The questions rejected went to the subject-matter of the issue and an affirmative answer would have been fatal to the will: Harden *v.* Hays, 9 Barr 151. The condition of a party's mind at the time he executes an instrument, is always a subject of inquiry as to which a subscribing witness may be cross-examined: Doe *v.* Ridgway, 5 B. & Ald. 55.

*B. M. Boyer*, for defendants in error.—Nothing but the execution of the will and the attestation was put in evidence by the examination in chief; the questions rejected were a substantive defence, which could not be introduced on cross-examination:

[Egbert *v.* Egbert.]

Breinig *v.* Meitzler, 11 Harris 157; Mitchell *v.* Welch, 5 Id. 339; Floyd *v.* Bovard, 6 W. & S. 77.

Mr. Justice Paxson delivered the opinion of the court, February 8th 1875.

The signature of a subscribing witness to an ordinary instrument of writing implies nothing more than that the instrument was signed by the person whose act or deed it purports to be. It is not so in the case of a subscribing witness to a will. His attestation is an assertion not only that the will was signed by the testator, but of the further fact that the testator was of sound mind when he executed it. It is said by Mr. Greenleaf, in his work on Evidence, vol. 2, § 691, that " the attesting witnesses are regarded in the law as persons placed round the testator, in order that no fraud may be practiced upon him in the execution of the will, and to judge of his capacity." The condition of mind of a testator, at the time of the execution of his will, is a part of the *res gestœ.* For this reason it has been held that the declarations of a deceased subscribing witness to a will, may be given in evidence to invalidate it: Harden *v.* Hays, 9 Barr 151. It was, therefore, entirely competent for the defendants, upon the trial of the issue of *devisavit vel non* in the court below, to ask John Baltz, a subscribing witness, upon cross-examination, the question: " What was the condition of mind of David N. Egbert, the alleged testator, as to soundness or unsoundness, when he signed the paper," and it was error in the learned judge to exclude it. All that occurred at the execution of the will, including the physical and mental condition of the testator at that time, was proper for cross-examination. A testator may be so weak physically as to be unable to write his name ; he may, if necessary, call upon some one present to sign the will for him or to hold his hand while he traces his signature ; his mind may be so clouded by disease or approaching dissolution ; or it may be so impaired by intemperance or other vices as to be incapable of forming an intelligent or connected thought. It is clearly the right of parties contesting a will to inquire into such matters upon the cross-examination of the subscribing witnesses. Nor is this a departure from a familiar rule of evidence that a defendant, who has not opened his case will not be allowed to introduce it to the jury by cross-examining the witnesses for the adverse party, for the reason as before stated that the mental condition of a testator at the time of the execution of his will is a part of the *res gestœ.*

This disposes of the third and fourth assignments of error. As the case will have to go back for a retrial it is proper to refer to the remaining assignments. It is sufficient to say, in reference to the first, that any statements made to the witness by certain of the legatees as to the effect of setting aside the will could not possibly

[Egbert *v.* Egbert.]

throw any light upon the issues before the jury.  The questions referred to in the second, fifth, sixth, seventh and eighth specifications were properly excluded.  The rule that a subscribing witness to a will may be cross-examined as to the mental condition of the testator has its limits.  The questions propounded to the witness had no necessary relation to the condition of the testator's mind at the time of the execution of the will.  The inquiries were of a vague, rambling character, without any limitation as to time.

We do not see. any error in the charge of the court.  The presumption of law is always in favor of sanity, and the learned judge was right in saying that the burden of proving unsoundness of mind in the testator was upon the party impeaching the validity of the will for this cause.

Judgment reversed and a *venire facias de novo* awarded.