# McNitt *v.* Gilliland, Appellant.

*Wills—Undue influence—Testamentary capacity—Feigned issue—Valid will.*

1. In the trial of an issue involving the validity of a will assailed on the ground of undue influence, the trial judge sits as a chancellor, and the evidence is addressed to him quite as much as to the jury. It must, as a whole, be judged by him independently of the jury, must satisfy his legal conscience as well as the jury, and can not be rightfully submitted to the jury as the basis of any finding which he could not approve. The trial judge can not permit the jury to do what he, after weighing the testimony in the light of the established law upon the subject, as a chancellor, would not do.

2. Where, upon a review of all the proofs, a verdict against the will could be properly sustained by a trial judge, the controversy should be submitted to the jury even though the judge should feel that were he sitting as a juror, he would not draw the inferences or reach the conclusions contended for by the contestants.

3. In so far as the testimony of a proponent of a will is not inherently unreasonable or improbable, the judge may consider it in measuring the preponderance of evidence.

4. In the trial of an issue devisavit vel non, the passing upon the relevancy of the evidence, the order of its admission, the mode of examining witnesses, etc., must be left very much to the sound discretion of the trial judge, and it is incumbent on the party complaining of the judgment entered not only to point out technical errors, but also to satisfy the appellate court that he or she was prejudiced thereby.

5. On the trial of an issue devisavit vel non it appeared that the testator in January, 1910, when the will was executed, was suffering from a disease which weakened him in body and mind. Two months prior thereto, testator's wife and sister had died, bequeathing him all their property. On January 14, 1910, testator told a servant that he wished to make a will and directed

him to call the cook and a niece of testator's deceased wife; testator then dictated a will, which the niece wrote; and the next day asked a nephew of his deceased wife to take the memoranda testament to an attorney to have a formal will written, which was done. From a draft prepared by the attorney, testator dictated the will in controversy, which was executed January 29, 1910, in the presence of the cook and the nephew of the testator's wife. In disposing of the property received from his sister, testator followed a scheme of distribution made by her in an early will, which she later revoked in order to benefit the testator. In accordance with the suggestion in his wife's will, testator provided that out of the estate that came from his wife, certain legacies should be paid, among them one to the niece of testator's wife, and that the residue be given to members of his wife's family, two of whom he appointed executors. Testator's heirs and next of kin contended that the will was invalid on the ground of undue influence and lack of testamentary capacity. The trial judge directed a verdict for proponents on the question of undue influence, and charged the jury that if they believed the testator was in the physical and mental condition stated by the witnesses for the contestants at the time he executed his will, the verdict should be for the contestants on the question of testamentary capacity, that if they were convinced of a general derangement or imbecility of mind existing at any time prior to the making of the will, then the burden was changed, and those who attempted to establish the will must prove that the alleged testator at the time of the execution of the instrument had sufficient mental capacity to execute a will, and it would not be sufficient merely to show that decedent could make proper answers to plain, common questions, but it must be proved that he had mind, memory, understanding and judgment so that he could in an intelligent way dispose of his property; and further that subscribing witnesses to a will are not always the best to prove the capacity of a testator, especially when they are beneficiaries under it. The jury found a verdict for the proponents and judgment was entered thereon. *Held,* no error.

Argued May 12, 1914. Appeal, No. 126, Jan. T., 1914, by defendants, from judgment of C. P. Mifflin Co., Jan. T., 1913, No. 34, on verdict for plaintiffs in case of D. S. McNitt and A. R. McNitt, executors, et al., plaintiffs and appellees, *v.* Samuel G. Gilliland, et al., defendants and appellants. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and MOSCHZISKER, JJ. Affirmed.

Feigned issue to determine the validity of a will. Before WOODS, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiffs, the proponents of the will and judgment thereon. Defendants appealed.

*Errors assigned* were instructions to the jury, rulings on evidence, and the refusal of the court to direct a verdict for defendants.

*F. W. Culbertson,* of *Culbertson & Culbertson,* for appellants, cited: Adam's Est., 220 Pa. 531; Yardly v. Cuthbertson, 108 Pa. 395; Cuthbertson's App., 97 Pa. 163; Murdy's App., 123 Pa. 464; Boyd v. Boyd, 66 Pa. 283; Swails v. White, 149 Pa. 261; Armor's Est., 154 Pa. 517; Steppe v. Frampton, 179 Pa. 284; Scattergood v. Kirk, 192 Pa. 263; Reichenbach v. Ruddach, 127 Pa. 564; Herster v. Herster, 116 Pa. 612; Wilson's App., 99 Pa. 545; Butts v. Armor, 164 Pa. 73; Miller v. Miller, 187 Pa. 572; Darlington's Est., 147 Pa. 624; Darlington's App., 86 Pa. 512; Miller's Est., 179 Pa. 645; Robinson v. Robinson, 203 Pa. 400; Albrights' Est., 17 York 109.

*J. S. Black,* with him *A. Reed Hayes* and *L. J. Durbin,* for appellees, cited: Roberts v. Clemens, 202 Pa. 198; Allison's Est., 210 Pa. 22; Harrison's App., 100 Pa. 458; Caldwell v. Anderson, 104 Pa. 199; Hindman v. Van Dyke, 153 Pa. 243; Pennypacker v. Pennypacker, 5 Sadler 408; Caughey v. Bridenbaugh, 208 Pa. 414; Slater v. Slater, 209 Pa. 194; Logan's Est., 195 Pa. 282; Egbert v. Egbert, 78 Pa. 326; Reichenbach v. Ruddach, 127 Pa. 564; Messner v. Elliott, 184 Pa. 41; Klein's Est., 207 Pa. 191; Cox's Est., 167 Pa. 501; Lenhart's Est., 199 Pa. 618; Englert v. Englert, 198 Pa. 326.

OPINION BY MR. JUSTICE MOSCHZISKER, July 1, 1914:
This is an appeal from a judgment entered on a ver-

dict in an issue devisavit vel non.  The executors and others interested in supporting the will are plaintiffs and those who attacked it are defendants; the former secured the verdict and judgment, and the latter have appealed.

There was no evidence contradicting the testimony concerning the occurences leading to, or at the time of, the execution of the will, and since the verdict indicates that the jury believed the facts to be as contended by the plaintiffs, we will narrate them accordingly.  Samuel C. Gilliland died at Hollidaysburg Hospital on March 12, 1913.  In January, 1910, he had suffered a slight stroke of apoplexy which made him somewhat weak in body and mind, and he had been placed in the hospital on the certificate of two physicians owing to his physical and mental condition.  The testator's wife died December 31, 1909, and his only sister about a week before that time; both of them left their estates to him, and, as we gather the fact, these two legacies constituted the bulk, if not all, of his property.  At argument it was stated by counsel for appellees, and not denied by the attorneys on the other side, that decedent's total estate amounted to about $50,000.  After the death of his wife Mr. Gilliland continued to live on his farm, near Reedsville, Pa., until March 1, 1910.  On January 14, 1910, in the night, the testator called to a negro employed on the farm, who at the time was sleeping in the same room with him, and said that he desired to make a will; the man replied that he could not assist him to do this.  Mr. Gilliland then instructed him to call Annie Hockenberry, his cook, and Rhoda McNitt, a niece of his deceased wife, who was visiting him at the time.  When these two women came to his bedside, he requested them to write from his dictation, and, after some protest, Miss McNitt secured pencil and paper and wrote as instructed.  Mr. Gilliland signed this paper, and it was produced at trial. He was up and about the next day, and shortly afterwards asked A. R. McNitt, a brother of Rhoda McNitt,

to take this memoranda testament to Bellefonte and
have an attorney write a more formal will from it for his
execution. Mr. McNitt did as requested; and after-
wards, from a draft prepared by the attorney, he dic-
tated the will now before the court, and it was written
down by the hand of Rhoda McNitt. On the 29th of
January, 1910, this writing was brought to the farm and
read to the testator, and he executed it in the presence
of Miss Hockenberry and Mr. McNitt.

The will first provides, "The real and personal prop-
erty inherited by me by will of my sister......, I dispose
of as follows"; testator then gives $5,000 in legacies to
thirteen different persons, and devises his "property in
Reedsville" to one of these legatees. It appears that his
sister, by a will made about two years before her death,
distributed her estate "very much the same as appears
in Mr. Gilliland's will," except as to one legacy of $500,
and that subsequently she revoked this will and left her
entire estate to the decedent. In disposing of the prop-
erty which he inherited from his sister, Mr. Gilliland
apparently sought to carry out the wishes expressed in
her former will; and after doing this, the testator pro-
vided that out of the estate which came from his wife,
his just debts should be paid, that "Lewis Taylor (col-
ored)" should be maintained during his life, that $500
should be paid to one church, and $600 to another, that
legacies amounting to $3,500 should be paid to desig-
nated persons, among them, $1,000 to Rhoda McNitt,
and that the rest of his estate should go to "members of
Sarah McNitt's family." He appointed D. S. McNitt
and A. R. McNitt executors. It appears that all these
latter gifts and provisions, including the $1,000 to
Rhoda M. McNitt, and the appointment of the two ex-
ecutors, are in accord with suggestions made in the will
of decedent's wife, from whom he inherited the property.
Mrs. Gilliland appears to have written her own will,
wherein, after leaving everything to her husband and
making him executor, she stated that when he was not

able to act, D. S. McNitt and A. R. McNitt were to look after the estate; then addressing her aunt, S. R. McNitt, she outlined the scheme of distribution which now appears in the will of her husband, and provided that the final residue was to go to the "S. R. McNitt family," just as does the will in contest.

In the issue as drawn, both the lack of testamentary capacity and undue influence are charged; but, after taking the testimony, the trial judge stated to the jury, "We have scanned this evidence and are unable to find in it such a state of facts as to establish undue influence; there has been no evidence produced that shows that Samuel C. Gilliland was under the control and subject to the will of either Rhoda McNitt or any other person, and we direct you so to find as to the second proposition which is now before you." The chief complaint on this appeal is that the trial judge removed the issue of undue influence from the jury. Although appellants fail to point out any direct evidence to prove the fact of undue influence, yet, they contend that because Rhoda M. McNitt and A. R. McNitt were present and assisted in the execution of the will, the latter acting as a subscribing witness, and both of them benefiting by its provision, the present case falls within the class where undue influence is presumed, until overcome. But, under the peculiar facts at bar, we are not convinced that the trial judge erred in the ruling complained of.

"In an issue tried involving the validity of a will assailed on the ground of undue influence, the trial judge sits as a chancellor......and the evidence is addressed to him quite as much as to the jury; it must as a whole be judged by him independently of the jury,—must satisfy his legal conscience, as well as the jury, and cannot be rightfully submitted to the jury as the basis of any finding which he could not approve; in a word, he cannot permit the jury to do what he as a chancellor, after weighing the evidence in the light of the established law upon the subject, would not do." When upon a review

of all the proofs, however, a verdict against the will
could be properly sustained by a trial judge, the contro-
versy should be submitted to the jury, "even though the
judge should feel that were he sitting as a juror he
would not draw the inference or reach the conclusions
contended for by the contestants. But if the testimony
is such that the judge would feel constrained to set aside
a verdict against the will as contrary to the manifest
weight of the evidence, determined according to the
relevant legal standards, it cannot be said that a sub-
stantial dispute has arisen." (Phillips Est., 244 Pa.
35.) Further, "in so far as the testimony of a propo-
nent of a will is not inherently unreasonable or improb-
able, the judge may consider it in measuring the prepon-
derance of the evidence." (Phillips Est., supra.) Here,
when we take into consideration the fact that the will in
controversy bears evidence on its face of an honorable
desire simply to carry out the recorded wishes of
those from whom the testator inherited his property,
this case is distinguished from all others to which we
have been referred; and we canot say that the trial
judge erred in treating it as one where the ordinary rule
applied and the burden was upon the contestants to
show the undue influence alleged. As already stated,
there was no direct proof of undue influence; Rhoda
McNitt only received so much of the decedent's estate
as her aunt had expressly suggested she should get, and
A. R. McNitt is entitled to a distributive share of the
residue merely as a member of the "S. R. McNitt family"
(of whom there appear to be at least six, if not more);
hence, it is not a case where those who assisted in the
preparation of the will received a comparatively large
proportion of the testator's estate. Moreover, there was
no testimony to show that either of these legatees occu-
pied a confidential business relation to the testator; the
only ones shown by the testimony to have attended to
business matters for him were Dr. Rothrock, a witness
for the defendants, and A. Hays Reed, an attorney who

appeared as a witness for the plaintiffs. Finally, although Rhoda McNitt was visiting the decedent's home at the time the will was prepared and executed, neither she nor her brother was an inmate of his house or in constant attendance upon him.

Most of the testimony, covering some 450 pages, goes to the question of the testamentary capacity of the decedent; and that issue was fairly submitted to the jury. They were told that if they believed the testator was in the physical and mental condition stated by the witnesses for contestants, at the time he executed his will, the verdict should be for the defendants. Further, that if they were convinced of a general derangement or imbecility of mind existing at any time prior to the making of the will, "Then the burden of proof is changed and those who attempted to establish the validity of the will must prove that the alleged testator, at the time of the execution of the instrument, had sufficient mental capacity to execute a will," and that it was not sufficient simply "to show that decedent could return appropriate answers to plain or common questions, but it must be proved that he had mind, memory, understanding and judgment, so that he could in an intelligent way dispose of his property." More than this, although the jury had been instructed that the testimony of persons actually present at the time of the execution of the will was entitled to "great weight," yet they were also told that "subscribing witnesses to a will are not always the best to prove the sanity of a testator, especially when they are beneficiaries under it." Finally, the jury were informed of the cardinal rule that "a disposing mind and memory, in view of the law, is one, in which the testator is shown to have had, at the making and execution of the will, a full and intelligent consciousness of the nature and effect of the act he was engaged in, a full knowledge of the property he possessed, an understanding of the disposition he wished to make of it by the will, and the persons and subjects he desired to participate in his

bounty." The case being thus presented, the jury found for the plaintiffs, and this indicates that they believed the testator to have been of sound and disposing mind when he dictated and subsequently executed his will; after examining the testimony, we cannot say that there are no sufficient proofs to sustain the verdict. In concluding our consideration of this branch of the case, we may add that the trial judge's references to the testimony impress us as entirely impartial and adequate to the occasion.

It remains to consider the assignments which complain of certain rulings on the evidence, particularly in relation to the cross-examination of the subscribing witnesses to the will. Liberality should be allowed, within proper bounds, in such an examination; but it has its limitations (Egbert v. Egbert, 78 Pa. 326, 329). "In the trial of an issue devisavit vel non, the passing upon the relevancy of the evidence, the order of its admission, the mode of examining witnesses, etc., must be left very much to the sound discretion of the trial judge, and it is incumbent on the party complaining not only to point out technical error, but also to satisfy the appellate court that he or she was prejudiced thereby" (Mossner v. Elliott, 184 Pa. 41). In the present investigation, while the trial judge controlled the order of the inquiry, yet, in the end, the witnesses were examined and fully cross-examined concerning the testator's mental condition and all that occurred at or about the time of the preparation and execution of the will. We have investigated the several assignments upon the subject in hand, and are convinced that no material or prejudicial error was committed in the rulings in question; but, since it would serve no useful purpose, we deem it unnecessary specifically to discuss each of these assignments.

The testator does not appear to have had any near relatives on his own side, and the McNitt's were his wife's people and had been his neighbors and close friends for years; under all the circumstances, the will

was a proper and natural one, and when the peculiar facts leading to and surrounding its execution are kept in mind, it bears upon its face evidence of rationality. The present case is unlike any of those cited to us, but, on principle, Pennypacker v. Pennypacker, 5 Sadler 408, Caldwell v. Anderson, 104 Pa. 199, and Allison's Est., 210 Pa. 22, may be referred to as most nearly approaching it.

The assignments are all overruled and the judgment is affirmed.