# Guarantee Trust & Safe Deposit Co., Guardian, Appellant, *v*. Heidenreich et al.

*Wills—Probate—Issue devisavit vel non—Testamentary capacity — Evidence — Substantial conflict—Partial insanity—Delusions— Expert testimony—Verdict advisory only.*

1. In the trial of an issue devisavit vel non the judge sits as a chancellor, and the question before him is not whether some of the evidence taken by itself would support the verdict, but whether it would do so when considered as a whole.

2. The verdict is only advisory to the chancellor; hence the rule that all evidence in support of the verdict must be taken as true, and all opposed must be rejected, is not applicable.

3. Testamentary incapacity must be established by the weight of the evidence.

4. To warrant submitting the contest to the jury, there must be such a substantial conflict in the evidence as to support a verdict for either side; a mere conflict is not sufficient.

5. A person who understands the business in hand and whose mind is sound with reference thereto can make a will.

6. Less capacity is needed to make a will than is usually required for the transaction of ordinary business.

7. In a will contest, the opinions of witnesses, lay or expert, are of little value when confronted by established facts.

8. The fact that testator was incapable of making a will at the time of his death, throws little light on his ability to do so three years before.

9. A person whose mind is perverted by insane delusions with reference to one or many subjects, however unreasonable or absurd, may nevertheless make a valid will provided the provisions thereof are not influenced by such delusions.

10. Delusions as to religion and matrimony are not ground for setting aside a will, unless the delusions affect the terms thereof.

11. A will cannot be successfully challenged because it fails to make distribution according to the intestate laws.

12. It is the duty of the court to protect a person's right to dispose of his own property although he may seem to do so unjustly.

13. In this case it was held that the will did not contain intrinsic evidence of invalidity.

250 GUAR. T.&S.D.CO., Guar., Aplnt., *v.* HEIDENREICH et al.

Arguments—Opinion of the Court.    [290 Pa.

Argued May 9, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeals, Nos. 6 and 21, Jan. T., 1927, by plaintiff, from judgment of C. P. Schuylkill Co., Jan. T., 1923, No. 284, for defendants, and from decree of O. C. Schuylkill Co., remitting record to register of wills, in case of Guarantee Trust & Safe Deposit Co., guardian of Anita Luke et al., minor children of Catherine Luke, deceased, v. Wm. H. Heidenreich, Jr., et al. Reversed.

Issue devisavit vel non. Before KOCH, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for defendants and record remitted by orphans' court to register of wills. Plaintiff appealed.

*Errors assigned* were judgment of the common pleas, and decree of orphans' court, quoting records.

*M. M. Burke* and *Fred B. Moser,* for appellant.—The burden of proof rested on defendants: Lawrence's Est., 286 Pa. 58; Logan's Est., 195 Pa. 282; Englert v. Englert, 198 Pa. 326; Fleming's Est., 265 Pa. 399; Roberts v. Clemens, 202 Pa. 198; Shreiner v. Shreiner, 178 Pa. 57; Draper's Est., 215 Pa. 314.

*R. P. Swank,* with him *John F. Whalen,* for appellee, cited: Patterson v. Patterson, 6 S. & R. 54, 55; Baker v. Lewis, 4 Rawle 355, 357; Thomas v. Carter, 170 Pa. 272, 282.

OPINION BY MR. JUSTICE WALLING, June 25, 1927:

William H. Heidenreich, of Schuylkill County (herein called the testator), died in December, 1920. Thereafter what purported to be his last will was presented to the register for probate, but, owing to a caveat filed by his son George E. and on the latter's petition, the pro-

ceedings were certified to the orphans' court. Upon testimony taken therein, an issue was awarded to the court of common pleas to try the question of testamentary capacity, wherein the guardian of certain of testator's grandchildren was named as plaintiff (proponent) and George E. and other children were named as defendants (contestants). The final trial resulted in a verdict and judgment for defendants and plaintiff has appealed. There is also an appeal by the same party from the final order of the orphans' court remitting the record to the register with an order in effect declaring the alleged will invalid. Upon a careful study of the record, containing about one thousand pages, we have reached the conclusion that the trial court should have directed a verdict for plaintiff, or entered judgment in its favor n. o. v.

In such trial the judge sits as a chancellor, and the question is not whether some of the evidence taken by itself would support the verdict, but whether it would when considered as a whole: Fleming's Est., 265 Pa. 399; Keller v. Lawson, 261 Pa. 489. Testamentary incapacity must be established by the weight of the evidence (Lawrence's Est., 286 Pa. 58; see also Sharpless's Est., 134 Pa. 250); here it clearly is not. To the chancellor the verdict is advisory; hence, in such case, the rule that all evidence in support of the verdict must be taken as true and all opposed must be rejected is not applicable. Of course, where the facts were for the jury the verdict should not be lightly set aside; but here, the proof taken as a whole was not sufficient to overcome the presumption of testamentary capacity and the case should have been withdrawn from the jury. See Tetlow's Est., 269 Pa. 486. To warrant submitting such contest to a jury there must be such a substantial conflict in the evidence as to support a verdict for either side. See Fleming's Est., supra; Phillip's Est., 244 Pa. 35; Roberts v. Clemens, 202 Pa. 198; also Brehony, Exr., v. Brehony, 289 Pa. 267. Here the proofs in favor of testamentary capacity are so strong as to

overcome the opposing proof and leave no substantial dispute: Tetlow's Est., supra. A mere conflict in the evidence does not warrant the submission of such case to a jury: Goss's Est., 274 Pa. 278; Tetlow's Est., supra. One who understands the business in hand and whose mind is sound with reference thereto can make a will. See Goss's Est., supra; Wilson v. Mitchell, 101 Pa. 495. "Less capacity is needed to make a will than is usually required for the transaction of ordinary business": Snyder's Est., 279 Pa. 63; see also Guarantee Tr. & S. D. Co. v. Waller, 240 Pa. 575; Thompson v. Kyner, 65 Pa. 368.

When the will was executed on November 21, 1917, testator was a retired farmer, eighty-three years of age, residing in Mahanoy City. The will was drawn by M. J. Ryan, Esq., a well known local attorney of good standing, and was the result of several conferences with the testator, aided by an inspection of at least two of his former wills, with other documents, which the latter produced for that purpose. A sketch of the will was taken home by testator and after some days returned with suggested changes. The final draft was read to and by him and signed in a clear, strong hand in the presence of two neighbors, called by testator as witnesses. No will brought to our attention in recent years was prepared and executed with more painstaking care and it is unqualifiedly supported by the testimony of the attorney and the two witnesses. It finds additional support in the testimony of nearly a score of other witnesses who knew testator well and who either expressed the opinion that he was of sound and disposing mind or that in all their acquaintance and transactions with him they never saw aught to the contrary. Among the latter was J. O. Ulrich, Esq., a member of the bar for thirty-nine years, who knew testator well and had been his attorney. These witnesses were as a rule lawyers, bankers, merchants, mechanics, collectors and others who had done business with testator; while the adverse opin-

ions as a rule were not based on any business transaction prior to or within two and a half years after the making of the will. Testator was well and active for his age, not only went alone about town and to the attorney's office, but also alone made repeated journeys to Philadelphia, Shamokin, Tamaqua, Hazleton, and other places. Until the making of the will and for two and a half years thereafter he had entire charge of his property, valued at about forty thousand dollars and consisting mostly of real estate. He kept his buildings in repair and insured, looked after his tenants, collected his rents, paid his taxes promptly to save the discount; also bought and paid for the supplies of his home and paid his electric light and other bills, did his own banking business and made regular contributions to his church, paying usually by checks. In the summer and fall of 1917 he remodelled his home, including the installation of a hot water heating system, which was completed the same month he made the will. During that summer he was in need of ready money and sought a loan from the bank, but instead finally decided to and did sell a piece of property for $5,500. He owned real estate in Shamokin which, because not productive, he sold in the summer of 1920 for $4,800, net, stubbornly and successfully insisting that the purchaser pay the taxes for the current year.

Testator's wife died in June, 1917, and about two months thereafter R. P. Swank, Esq., of Mahanoy City, a member of the bar, drew a will for testator, which Mr. Swank and his wife signed as witnesses. As he became of counsel for contestants, neither he nor his wife was asked as to testator's mental condition; but that Mr. Swank drew a will, to the execution of which he and his wife were witnesses, is evidence that they then (August, 1917), considered the maker of disposing mind: Egbert v. Egbert, 78 Pa. 326.

For contestants there was testimony tending strongly to show that on the question of religion William H.

254 GUAR. T.& S. D. CO., Guar., Aplnt., *v.* HEIDENREICH et al.

Opinion of the Court. [290 Pa.

Heidenreich, the testator was, to use a common expression, "crazy." This appears from the testimony of his pastor and of another clergyman, both of whom knew him well and often conversed with him on that subject. This is corroborated by like statements of other witnesses and by letters written by testator on that subject which are a senseless jargon. After the death of his wife, testator desired to marry her sister, a widow nearly his own age. While that fact did not tend to show unsoundness of mind, the manner in which he talked, wrote and acted about it, did. Almost entirely because of what testator said and did with reference to these two matters, viz., religion and marriage, the two clergymen expressed the opinion that he was incapable of making a will. Peter G. Heidenreich, a former mayor of Hazleton and nephew of testator, expressed a like opinion, based largely on the same ground. To like import is the opinion of testator's son, and principal contestant, George E. Heidenreich. Possibly the most important witness for the contestants was Dr. Bissel who was well acquainted with testator and attended his wife during her last illness. The doctor expressed the opinion that testator was then afflicted with senile dementia, a progressive malady, and, while he might do some business, was incapable of making a valid will. The witness also says Mr. Heidenreich had previously suffered a paralytic stroke; if so, it must have been slight, for it is not mentioned by any other witness and apparently had no effect on his ability to go and do as he pleased. The doctor's opinion that testator was unable to make a valid will in 1917, because of a progressive disease, is wholly inconsistent with the fact that for nearly three years thereafter he actually did a large amount of business. In a will contest the opinions of witnesses, lay or expert, are of little value when confronted by established facts: Draper's Est., 215 Pa. 314; Kane's Est., 206 Pa. 204. At the last trial the doctor mentioned a shocking suggestion, alleged to have been made by testator, when his

wife was dying. The doctor in his testimony on two former occasions had made no mention thereof. If true, it would not prove the lack of testamentary capacity, while it might tend to show testator was a victim of erotomania. The opinions of contestants' witnesses were possibly somewhat influenced by the fact that the will was not what they thought it should have been; but the right to make a testamentary disposition of property would be vain if it must accord with the ideas of others.

It is contended for contestants that the will contains intrinsic evidence of invalidity, but we are not so persuaded. Testator, who then had six adult children, devised the farm to his son, William H., Jr., who had occupied it for many years, and also gave him $1,000. To his favorite daughter, Mrs. Catharine Lucke, he gave $500, and also devised to her and her husband his home in Mahanoy City. This the will states is in view of the fact that she was about to loan him $2,000 for the term of his natural life, at four per cent interest, and further says the principal is only to be repaid out of his personal estate. Catharine died in a few months and that she loaned him the $2,000 is not shown. Just what he intended to do with it does not appear. He was occasionally a borrower of money and might wish to avoid such necessity in the future, although he then had a substantial balance in bank. There is nothing in this provision so abnormal as to warrant striking down the will. As to his son, George E., he made a provision as follows: "Having already provided for my son, George E. Heidenreich, in my life time, I therefore, now bequeath him the sum of five hundred ($500) dollars"; and he made a like bequest for the same stated reason to each of three other children. George E. made a rather unsuccessful attempt to deny that his father had rendered him assistance. Testator then gave the residue of the estate to his six grandchildren, naming them, with a provision that should he leave other grandchildren they were to

share equally with those mentioned. As to his grand-daughter, Florence, the will provides: "As to my grand daughter, Florence Heidenreich whom I have not mentioned above, she has already been provided for by me, by giving to her two (2) shares of Union National Bank stock, Certificate No. 665, which have been assigned and placed to her name on the books of the Union National Bank of Mahanoy City, Pa. The interest upon which I am to draw until my death." It was urged for contestants that Florence never actually received the stock, or, if she did, that it was retransferred to her grandfather. The effect of this we are not now called upon to consider or to construe any provision of the will. It may be mentioned, however, that Florence, who made her home with her grandfather, before and after the will was executed, was a strong witness in favor of his testamentary capacity. That this will differed from those of earlier dates is not of great moment; that is the purpose of a new will.

On July 22, 1920, two years and eight months after the will was made, the testator gave a check for $660 to his son George E. and a check for like amount to Mrs. Hawk, a daughter. In each case stating it was "For funeral expenses." In the former, while the correct amount was written, the figures were inaccurate and in the latter the name was signed "Wm. H. H. Heidenreich." The reason for these checks was not satisfactorily shown, and shortly thereafter, on petition of the son, George E., and after a hearing, the court appointed a guardian to take care of the property of his father; to which the latter at the time made no serious objection, but later petitioned the court to revoke the appointment; pending action thereon, Wm. H. Heidenreich died. The fact, if it is such, that he was incapable of managing his estate in 1920 throws little if any light on his ability to make a will in 1917. The trial court unduly stressed the fact that in a letter written near the date of the will, on the subject of his proposed marriage, testator said, "All my

friends declare me crazy." Also the fact that in writing a letter for her grandfather, Florence added a postscript, expressing her opinion that he would lose his mind unless the clergyman and the woman he, testator, desired to marry came to Philadelphia. These have but slight bearing on his testamentary capacity.

Considering and reconciling the evidence as best we may, it clearly appears that testator's mind was sound as to matters of business, while a finding that he had delusions as to religion and matrimony would be warranted. Delusions, however, will not affect the validity of a will unless it is influenced thereby. "A person whose mind is perverted by insane delusions with reference to one or many subjects, however unreasonable and absurd, may nevertheless make a valid will provided the provisions of such will are not influenced by such delusions": Shreiner et al. v. Shreiner, 178 Pa. 57; see also Doster's Est., 271 Pa. 68; Englert v. Englert, 198 Pa. 326; Thomas, Exr., v. Carter et al., 170 Pa. 272; Taylor, Exr., v. Trich et al., 165 Pa. 586; and Watmough's Est., 258 Pa. 22, 28. There is no evidence that testator was under any delusion as to his property, or kindred. Neither the clergymen, the church, nor the one he desired to marry, is mentioned in the will; his entire estate being given to his children and grandchildren, all of whom were named therein. Hence, as the delusions were entirely aside therefrom they are unimportant.

A will cannot be successfully challenged because it fails to make distribution according to the intestate laws, in fact its main object is to withdraw the estate therefrom. It is the duty of the court to protect a citizen's right to dispose of his own property although he may seem to do so unjustly. See Morgan's Est., 219 Pa. 355; Cauffman v. Long, 82 Pa. 72. In view of the opinion of Mr. Justice KEPHART, in Lawrence's Est., supra, discussing questions applicable to the instant case, and of other recent decisions, to some of which we have referred, further elaboration is unnecessary.

The judgment of the court of common pleas is reversed and is here entered for the plaintiff n. o. v.; the decree of the orphans' court is set aside and the record remitted that the will may be duly probated. Costs to be paid by the contestants.