## Llewellyn's Estate.

*Wills — Probate — Undue influence — Confidential relations—Evidence—Issue devisavit vel non.*

1. A confidential relationship arises *prima facie*, and, it may seem as a matter of law, where the testator and the beneficiary who has to do with the making of a will are trustee and *cestui que* trust, attorney or scrivener and clerk, physician and patient, clergyman and parishioner, master and servant, or the like, where, in other words, there is trustfulness on one side and a dominating influence on the other, which destroys the free agency of the testator, but it does not exist in its legal sense between a testator and a beneficiary who were intimate friends for many years and whose friendship supplied a natural, strong and entirely worthy motive for the testamentary gift.

2. A will cannot be successfully challenged because it fails to make distribution according to the intestate laws; in fact, its main object is to withdraw the estate therefrom.

3. The question before the Orphans' Court when asked to award an issue *devisavit vel non* is this: "Were the testimony before the court to be submitted to a jury, and that jury should find a verdict against the will, would the court, sitting as a chancellor, be constrained to uphold the verdict?"

4. A petition for an issue *devisavit vel non* should not aver that testator lacked testamentary capacity, when contestant relies solely on a claim of undue influence and produces not a scintilla of evidence to impugn testator's testamentary capacity.

Exceptions to decree of Stearne, J., Presiding Judge, on appeal from Register of Wills. O. C. Phila. Co., Jan. T., 1927, No. 704.

*William T. Connor, John R. K. Scott* and *James Gay Gordon,* for exceptant.

*Ralph B. Evans* and *Owen J. Roberts,* contra.

GEST, J., April 5, 1928.—This appeal was heard during four days, and over 400 pages of testimony were taken before the judge who presided at the hearing. We have read it all carefully, with the aid of the elaborate arguments of counsel, and are so well satisfied with the opinion of the Presiding Judge and his conclusions of law and fact that we might well dismiss the exceptions without more. The estate of the testator, however, is very large, and the case was argued in behalf of the appellant with such zeal and ability by his learned counsel that we shall add a few words in support of what the judge in the first instance has so well said, though we do not propose to discuss in detail the numerous cases decided by our Supreme Court upon the subject of confidential relationship. The courts abstain from laying down an exact and comprehensive definition of what constitutes confidential relationship. Briefly, we may say that it arises *prima facie,* and it may seem as matter of law, where the testator and the beneficiary who has to do with the making of the will are trustee and *cestui que trust,* attorney or scrivener and clerk, physician and patient, clergyman and parishioner, master and servant, or the like, where, in other words, there is trustfulness on one side and a dominating influence on the other, which destroys the free agency of the testator; as was said in Leedom *v.* Palmer, 274 Pa. 25: "In some cases, the confidential relation is a conclusion of law, in others it is a question of fact to be established by the evidence." In the present case, our examination of the testimony convinces us that no confidential relationship, in its legal sense, existed between Llewellyn and Swartly. They were indeed intimate friends and had been so for many years; so much so that the learned counsel for the appellant compared them in his argument to David and Jonathan; but it would be more proper to say that Llewellyn, the elder man and patron of Swartly, had greater influence over him than had Swartly over the other. They were like brothers and closer to one another than many brothers are,

and this friendship supplied a natural, strong and entirely worthy motive for Llewellyn's testamentary gift to Swartly in preference to cousins with whom he had no intimacy and for whom he had no affection; in fact, he declared to disinterested witnesses that he did not wish his next of kin to inherit his property. "A will cannot be successfully challenged because it fails to make distribution according to the intestate laws; in fact, its main object is to withdraw the estate therefrom:" Guarantee Trust Co. v. Heidenreich, 290 Pa. 249. Llewellyn was unmarried and childless; he had no brothers, sisters, nephews or nieces. The will was drawn by an attorney of his own choice and disinherited no one who had any just claim to be benefited. In all the circumstances, it was a natural and proper disposition of his estate. We have examined with care the decisions cited and relied on by the learned counsel for the appellant, and, in our opinion, they do not sustain him in the present case, but, as we have said, we will not prolong this opinion by any unnecessary recital of their specific facts. Suffice it to say, that we do not discover in the testimony any evidence of undue influence exerted by Swartly over Llewellyn; but, after all, the criterion for us, when asked to award an issue of d. v. n., is a simple one. Briefly, it is this: Were the testimony before us to be submitted to a jury and that jury should find a verdict against the will, would the court, sitting as a chancellor, be constrained to uphold the verdict? The testimony must be considered as a whole: Phillips's Estate, 244 Pa. 35; Tetlow's Estate, 269 Pa. 486; Guarantee Trust Co. v. Heidenreich, 290 Pa. 249. Just as an aviator from aloft, with his vision unobstructed by clouds, obtains a bird's-eye view of the entire terrain, without overvaluation or underestimation of the details of the topography of the landscape beneath him, so the patient perusal of the testimony as a whole gives the court, in one comprehensive view, the correct mental picture of the entire case. Inspecting the case as a whole, the objections upon which the contestant rests are of very minor importance. The omission of the attorney who drew the will to attend to its formal execution, the inconsistent statements of the attesting witnesses, who appeared to be of less than average intelligence, and other matters, do not avail when merged in the mass of testimony adduced in support of the will. This will, without the shadow of a doubt, expressed the real testamentary purpose of the testator, and we would not be justified in throwing the contest into a jury-box. As, in our opinion, the Presiding Judge arrived at the correct conclusion, the exceptions to his opinion and decree must be dismissed.

We add a few words regarding the pleadings in the case.

The petition filed by the contestant and sworn to by him averred squarely that Llewellyn, at the time of the execution of the will and codicil, "was not a person of sound and disposing mind, memory and understanding, but, on the contrary, was of unsound mind and incompetent to execute any paper in the nature of a last Will and Testament;" and this averment was as squarely denied in the answer. This, then, is one of the issues raised by the pleadings, and yet, when counsel for the contestant opened the case at the hearing, he confined his contention to this, that the will was secured by undue influence exerted upon the decedent by Swartly. At the hearing, not a vestige or scintilla of testimony was produced to impugn Llewellyn's testamentary capacity, and the proponent, under the pleadings which raised the issue, produced a mass of testimony which proved, without the slightest doubt, that the testator was fully competent to make a will. We have had other cases where such allegations have been made without any substantial foundation, much as an old pleader in actions of trespass would round out his declaration with an averment that the defendant had committed *"alia enormia,"* and we think

that the attention of litigants should be called to the propriety of making no allegations in their sworn petitions, in such cases as this, that have not at least some *prima facie* basis of fact.

The exceptions to the appeal are dismissed, and the appeal from the Register of Wills is dismissed and the record is remitted to the Register of Wills.

VAN DUSEN, J., did not sit.